491 P.2d 834

**STATE of Arizona, Appellee,**

v.

**Joseph Francis TINGHITELLA, Appellant.**

No. 2176.

Supreme Court of Arizona,
In Division.

Dec. 17, 1971.

Rehearing Denied Jan. 11, 1972.

**2**

Gary K. Nelson, Atty. Gen., Carl Waag, Former Asst. Atty. Gen., John H. Ryley, Asst. Atty. Gen., Phoenix, for appellee.

Lurie & Friedman, by Steven M. Friedman, Phoenix, for appellant.

LOCKWOOD, Justice:

Joseph F. Tinghitella was tried and convicted by a jury of "armed assault with intent to commit murder" (A.R.S. § 13-248) and of "resisting, delaying, coercing or obstructing a public officer" (A.R.S. § 13-541). Because he had previously been convicted in California of first degree robbery, he was sentenced pursuant to the "increased punishment for subsequent convic-tion" statutes (A.R.S. §§ 13-1649-1650) to concurrent prison terms of from ten to twelve years for the "armed assault" count, and of from five to seven years for the "delaying or obstructing" count. Defendant Tinghitella appeals from these judgments and sentences, and from a Superior Court order denying his motion for a new trial.

On the evening of November 18, 1969, Maricopa County Deputy Sheriff Robert Schulte stopped a car being driven by Tinghitella on U. S. Route 60. The defendant had been driving left of the center line. After questioning Tinghitella and suspecting that he was intoxicated, Schulte asked Tinghitella to perform some physical tests and a "sober meter" (balloon) test. These tests indicated that the defendant's physical dexterity and driving ability were impaired by alcoholic beverages. Tinghitella did cooperate in performing these tests.

Schulte then told Tinghitella that he was under arrest for driving while under the influence of alcohol, and asked Tinghitella to place his hands on the roof of the car, so that he could be frisked. Because Tinghitella refused, Officer Schulte repeated the request. The defendant, however, "side-stepped" away from the officer, and the officer followed him. Tinghitella then turned and stepped away from Officer Schulte, who grabbed his arm. Tinghitella broke this hold, turned and faced Schulte, "stuck his hand under his coat," and drew out an automatic pistol. Schulte immediately grabbed the barrel, which Tinghitella had aimed at him. The two men wrestled for several minutes. The gun discharged twice, but no one was hit. Eventually, Schulte "maced" Tinghitella, disarmed him, and overpowered him. As stated above, a jury convicted Tinghitella of armed assault with intent to commit murder, and of delaying or obstructing a public officer.

On appeal, Tinghitella argues that "A. R.S. § 13-1641 (1956) requires the State to

elect as between two charges when * * * those two charges are inextricably intertwined."

A.R.S. § 13–1641 provides that:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

This "double punishment" statute was adopted from a similar California law. This court has held that "[i]n the absence of a case in this jurisdiction construing this section, we will follow the California cases in so far as their reasoning is sound." State v. Vallejos, 89 Ariz. 76, 358 P.2d 178 (1960).

Possibly because of our sometimes terse reliance upon the California cases, which themselves are inconsistent, or upon the variant facts under which our statute has been interpreted, the decisions construing § 13–1641 have taken several approaches to resolving a difficult legal question: what constitutes "an act"?

In State v. Westbrook, 79 Ariz. 116, 285 P.2d 161 (1954), the court approved an "identical elements test":

"We need to determine, then, whether the two crimes charged in this case are based on the same act or omission, in other words, whether the two crimes have identical components. [The court then listed the separate elements of the two crimes charged.] * * * The circumstance that almost identical evidence was used in the prosecution of the two crimes involved in this appeal is not fatal. The act or omission to be proved in each case was patently different." 79 Ariz. at 118, 285 P.2d at 162.

In State v. Vallejos, supra, this court reviewed several California cases. Adopting in part the rationale of one California case, we stated that where one criminal act (possession of marijuana) is done "for the

*purpose* of" completing a second criminal act (sale of marijuana), "it will be considered one *transaction* permitting but one conviction and sentence * * *. In each case the facts must be examined to determine whether the transactional test has been met." 89 Ariz. at 82, 83, 358 P.2d at 182. (Emphasis supplied.)

In State v. Harvey, 98 Ariz. 70, 402 P.2d 17 (1965), we indicated that "*the conduct which occurred on the day in question* * * * was the basis of both convictions and therefore the latter conviction * * * must be reversed." 98 Ariz. at 73, 402 P.2d at 20. (Emphasis supplied.)

In State v. Green, 98 Ariz. 254, 403 P.2d 809 (1965), this Court discussed the California view that what constitutes "one act," for purposes of A.R.S. § 13–1641, is "dependent upon the intent and objective of the defendant, i.e., if all the offenses are incident to *one objective*, the defendant may be punished for any one of them but not for more than one." 98 Ariz. at 256, 403 P.2d at 811. (Emphasis supplied.)

In State v. Price, 106 Ariz. 433, at 434, 477 P.2d 523, at 524 (1970), we stated that in cases of multiple charges where the first criminal act was done "*for the purpose of*" completing the second crime, "there was but one *transaction*" for purposes of § 13–1641. (Emphasis supplied.)

In State v. Mitchell, 106 Ariz. 492, 478 P.2d 517 (1970), we again mentioned the "identical elements test" as used in State v. Westbrook, supra, and we indicated a practical method for determining whether § 13–1641 has been violated: "eliminate the elements in one charge and determine whether the facts left would support the other charge." 106 Ariz. at 495, 478 P.2d at 520.

 In order to dispel any apparent ambiguity in the cases cited, we hold that the most practical method of determining the number of "acts" which may be punishable under § 13–1641 and with which an accused may be charged is the "identical elements" test used in the Westbrook and Mitchell cases. Thus the time span in

which the number of acts may have been committed is not material so long as there is proof that each act was composed of the necessary criminal elements. See State v. Boag, 104 Ariz. 362, 453 P.2d 508 (1969).

■ In any event the criminal *intent* required by A.R.S. § 13–131 to commit each *act* as determined by its component elements, is a matter for determination by the trier of fact.

■ Let us apply the "identical elements" test to the facts in the instant case. As stated in State v. Mitchell, *supra,* we must "eliminate the elements in one charge and determine whether the facts left would support the other charge." The necessary elements of the crime of "resisting, delaying, coercing or obstructing a public officer" are: (1) the wilful resisting, delaying, coercing or obstructing, (2) of a public officer, (3) in the discharge of his duty. A.R.S. § 13–541, subsec. A. At the moment when Joseph Tinghitella refused to place his hands on the patrol car, this crime was complete. (The information in the instant case alleged the use of a gun in the commission of the *first count* [armed assault with intent to commit murder] *only,* not during the commission of the second count [delaying or obstructing]. Therefore, § 13–541, subsec. B [delaying or obstructing committed by an armed person] does not come into play in proving Count Two.)

■ The necessary elements of the crime of "assault with intent to commit murder, committed by a person armed with a gun" are: (1) an unlawful attempt, (2) coupled with a present ability, (3) to commit a physical injury on the person of another, (4) all of the above done by a person armed with a gun and thereby presumably intending to commit murder. A.R.S. §§ 13–241, 13–248. *See, also,* State v. Mancini, 107 Ariz. 71, 481 P.2d 864 (1971). When Tinghitella drew the pistol, aimed it at Deputy Schulte, and discharged it during the fracas, this crime was also complete.

■ When all of the elements of an armed assault are removed, the facts in the instant case leave sufficient elements to constitute the crime of delaying or obstructing a public officer—and vice versa. Although the two acts were committed within a short time span, neither was completely incidental to the commission of the other. See State v. Mays, 105 Ariz. 47, 459 P.2d 307 (1969), aff'd, 105 Ariz. 242, 462 P.2d 791 (1969). Tinghitella committed the acts necessary to satisfy all of the elements of each of the two crimes with which he was charged.

■ The fact that the County Attorney's final argument mentioned the use of the gun, if error, was harmless in view of the jury instructions which properly defined unarmed obstructing and made no reference to armed obstructing. We therefore hold that it was not error for the court to deny defendant's motion to strike one of the two counts.

Defendant also complains that he was denied his right to testify because of the court's refusal to grant his motion *in limine* to prevent the County Attorney from impeaching defendant's credibility by introducing evidence of the defendant's prior felony conviction. This motion was denied and the defendant thereafter elected not to testify at his trial.

■ Tinghitella contends that by denying the motion *in limine* the trial court "thereby rendered [Tinghitella] incompetent as a witness", contra to A.R.S. § 12–2201 (1956) which provides that a criminal conviction will not render a person incompetent to testify. Tinghitella was competent to testify at his own trial, despite his prior conviction. He simply exercised his constitutional privilege to remain silent, thus avoiding being impeached by the prior felony conviction. Impeachment by evidence of prior conviction is a well-established and acceptable practice under our rules of evidence. "[O]ne who invokes his privilege not to take the witness stand for whatever reason he chooses, cannot as a basis for rehearing complain that his case

was prejudiced by such act." State v. Von Reeden, 106 Ariz. 409, 477 P.2d 240 (1970). The trial court's denial of the motion *in limine* was not error.

 Defendant urges error in the court's giving certain additional instructions. After beginning their deliberation, the jury asked for additional instructions as to specific definitions of "intent," "malice," and "malice aforethought." The record indicates that the requested additional instructions were given to the jury in the presence of and without objection by defense counsel. The trial court then asked whether counsel had any corrections to the additional instructions, and both counsel for defense and for the state answered "none".

The jury then retired for further deliberation, and the judge stated:

"At this time the record may reflect any objections * * * with respect to the additional instructions being given.

"MR. REMENDER: [attorney for defendant] My position is I will stipulate with the County Attorney that those are the correct definitions of the words."

We find no error in the definitions given by the court in response to the jury's request, and defendant cannot now complain of any irregularity in procedure since he failed to object to it. State v. Jordan, 105 Ariz. 250, 462 P.2d 799 (1969).

 Tinghitella also contends that "the proof in this case [was not sufficient to constitute] a prima facie case of the charges for which the defendant was charged." We have examined the entire record and we are convinced that there was sufficient evidence to support the jury's verdicts and the subsequent judgments as to both counts.

Finally, defense counsel has, at the insistence of Tinghitella, raised the argument that Tinghitella did not receive adequate assistance of counsel. This court has stated that in order to justify setting aside a conviction upon the ground that the accused was not effectively represented by counsel, the accused must show that his representation was a farce or a sham, shocking to the conscience, or a mockery of justice. State v. Brookshire, 107 Ariz. 21, 480 P.2d 985 (1971); State v. Kruchten, 101 Ariz. 186, 417 P.2d 510 (1966), cert. denied 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687 (1967). There is no indication in the record that the representation which Tinghitella has received has been a farce, a sham, shocking to the conscience, or a mockery of justice. Therefore, this contention cannot be sustained.

Judgment affirmed.

UDALL, J., and STEVENS, Court of Appeals Judge, concur.