556 P.2d 1167

The STATE of Arizona, Appellee,

v.

Jesus Maria CELAYA and Manuel Leyva
Cordova, Appellants.

The STATE of Arizona, Appellee,

v.

Oscar CHAVARRIA, Appellant.

Nos. 2 CA–CR 803, 2 CA–CR 804.

Court of Appeals of Arizona,
Division 2.

Sept. 17, 1976.

Rehearing Denied Oct. 13, 1976.

Petition for Review Nov. 16, 1976.

Bruce E. Babbitt, Atty. Gen. by Heather A. Sigworth, Asst. Atty. Gen., Tucson, and Gail Jansen, Third Year Law Student Certified Under Rule 28(e), for appellee.

Laber, Lovallo, Colarich & Couser, Ltd. by R. Lamar Couser and Charles P. Stirton, Tucson, for appellants Celaya & Cordova.

John M. Neis, Pima County Public Defender by Charles L. Weninger, Asst. Pub-

lic Defender, Tucson, for appellant Chavarria.

## OPINION

HOWARD, Chief Judge.

This is a consolidated appeal by the appellants who were convicted by a jury of various narcotics offenses, including conspiracy to sell heroin, and sentenced by the court to imprisonment in the Arizona State Prison. The nature of their convictions and terms of their sentences will be set forth with greater particularity in the body of this opinion.

The evidence which led to conviction was provided by Clinton Scott, a co-conspirator, and by law enforcement officers who either participated in the sale or in the surveillance of the transaction. The evidence is as follows.

On July 26, 1975, Scott met with Carlos Saucedo who had a purchaser for some heroin. They decided that Scott would try to get six ounces from his source, appellant Chavarria, from whom Scott had previously purchased narcotics. They agreed that Scott would bring Saucedo a sample of the heroin if he were successful. Scott went to the residence of Chavarria where he discussed the matter with Chavarria who stated he would have to make a phone call. After the phone call Chavarria left and returned with appellants Jesus Celaya and Manuel Leyva Cordova. Chavarria had with him a bag containing heroin. He cut off a sample for Scott and told him that they didn't have six ounces but only five ounces. When Scott asked in Spanish if there was only five ounces, both Cordova and Celaya nodded.

Scott returned with the sample to Carlos Saucedo. They then took the sample to the house of a person referred to in the trial as "Girl Cousin", who had originally arranged the contact with the buyer. After the sample was checked, Scott called Chavarria, who was waiting at Scott's residence, and arranged for a meeting at a liquor store on 22nd Street. When Chavar-

ria arrived he was accompanied by Jesus Celaya. Arrangements were then made for Chavarria to meet Scott in the parking lot of the Holiday Inn South.

Scott went back to "Girl Cousin's" house to pick up Carlos Saucedo who then informed Scott that before the sale could go through "Girl Cousin" wanted to check the heroin. Scott would not agree to this but they finally decided that a person referred to in the trial as "Male Cousin" would check the heroin prior to the sale. Scott, Saucedo and "Male Cousin" went to the Holiday Inn South parking lot where they met Chavarria who was driving a white Oldsmobile. Chavarria was accompanied by Cordova and Celaya. Chavarria gave Scott the heroin and Scott showed it to "Male Cousin". After the heroin was inspected by "Male Cousin" it was given back to Chavarria. Scott and Saucedo left the motel to take "Male Cousin" to "Girl Cousin's" residence. Chavarria took Cordova and Celaya to the Sands Motel where Cordova and Celaya got into their automobile, a yellow Mustang. The yellow Mustang left the Sands Motel and took up a position approximately 200 yards south of the Holiday Inn South Motel. Chavarria went in his Oldsmobile and parked it at the Holiday Inn South.

In the meantime, when Scott, Saucedo and "Male Cousin" arrived at "Girl Cousin's" residence, "Girl Cousin" insisted on seeing the heroin. Scott and Saucedo took "Girl Cousin" to the Holiday Inn South where they met Chavarria. The heroin was shown to "Girl Cousin" who appeared satisfied with the quality of the heroin. "Girl Cousin" was returned to her residence and Scott and Saucedo went back to the Holiday Inn South where they got the heroin from Chavarria and took it to Room 126 in the motel. There they met the buyer who was an undercover narcotics agent. The heroin was shown to the buyer who, after inspecting it, went with Scott to the buyer's car. The buyer opened the back of his car and removed a briefcase which contained money. Scott and the

buyer then returned to the motel room and the money was given to Saucedo. While the money was being counted undercover agents entered the room and arrested Scott and Saucedo. Chavarria, who had been waiting in the parking lot was arrested by other agents. Also arrested were the occupants of the yellow Mustang, Celaya and Cordova. When they were searched cocaine was found on Celaya and was seized.

The movements of the various automobiles at the Holiday Inn South and at the Sands Motel were all observed by members of the law enforcement surveillance team.

## APPEAL OF CHAVARRIA

### I. Failure to Reveal Identity of Informant

Prior to and at trial appellants moved the court to require disclosure of the identity of the informant. They were of the opinion that either "Male Cousin" or "Girl Cousin" were informers. On the pretrial motion the court held an *in camera* hearing and after taking the testimony of certain law enforcement officers, denied the motion.

 The state may withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officers in furtherance of the public interest in effective law enforcement. *State v. Tuell,* 112 Ariz. 340, 541 P.2d 1142 (1975). Where, however, the disclosure of an informant's identity is relevant and helpful to the defense or is essential to the fair determination of a cause, the privilege protecting the name of a confidential reliable informant must give way. *State v. Tuell,* supra; *State v. Castro,* 13 Ariz.App. 240, 475 P.2d 725 (1970). The burden is on the defendant who seeks disclosure of the informant to show that in view of the evidence, the informer would be a material witness on the issue of guilt which might result in his exoneration and that non-disclosure of the informant's identity would deprive him of a fair trial.

*State v. Tuell,* supra; *State v. Castro,* supra.

 The only foundation which appellants laid in their motion was the fact that they believed the informant witnessed some of the incidents. The mere fact that an informant is a witness is not controlling where such evidence is not necessary to obtain a conviction. *Taylor v. State,* 136 Ga.App. 31, 220 S.E.2d 49 (1975). We have been provided with a transcript of the *in camera* hearing. After reading it we are convinced that disclosure of the informant was not essential to a fair determination of the issues involved and the trial court did not err in refusing to order disclosure.

### II. Testimony of Prior Bad Acts

Appellant claims that Scott's testimony as to his prior dealings with Chavarria was erroneously admitted since it related to prior bad conduct on his part.

 It is a general rule that evidence which shows that a defendant has or may have committed other crimes is prejudicial and usually inadmissible. *State v. Hughes,* 102 Ariz. 118, 426 P.2d 386 (1967); *State v. Babineaux,* 22 Ariz.App. 322, 526 P.2d 1277 (1974). A common exception is that such evidence is admissible when proof of the prior offense tends to establish a later offense by showing motive, intent, absence of mistakes or a common scheme or design. *State v. Babineaux,* supra. We believe the testimony was admissible here to show that Chavarria was engaged in a common plan or scheme to violate the narcotics laws of this state by acting as a middleman between dealers and sellers of narcotics. Even assuming arguendo that the introduction of such testimony was erroneous, its admission does not mandate reversal. It is only when it is reasonably probable that the verdict would have been different if the testimony had not been admitted that the case must be reversed. *State v. Sianez,* 103 Ariz. 616, 447 P.2d 874 (1968).

Here the officers saw Chavarria hand the bag containing the heroin to Scott who then took it into the agent's room. Chavarria's fingerprints were found on the bag. We do not believe that the results would have been any different had the testimony not been admitted.

### III. Unauthorized Sentence

Appellant was sentenced by the court on Count Two, possession of heroin for sale to a term in the Arizona State Prison of not less than ten nor more than fifteen years and on Count Three, unlawful transportation of heroin, not less than fifteen nor more than twenty years in the Arizona State Prison, the sentences to run concurrently. The trial court suspended imposition of sentence on Count Five, the conspiracy charge, and placed appellant on four years' probation to begin at the end of his prison term.

■ Appellant mounts three attacks on the sentences. He first contends that the court acted without authority in commencing his probation on the conspiracy charge after his service of the sentences in the Arizona State Prison. On the date that appellant was indicted for conspiracy in violation of A.R.S. Sec. 13-331 the maximum sentence was four years. Assuming that appellant would have to serve the maximum sentence he would be under probation twenty-four years from the date of his sentence. The same situation was presented to the court in State v. Ortiz, 98 Ariz. 65, 402 P.2d 14 (1965) and the procedure was condemned. Following State v. Ortiz, supra, we are of the opinion that the sentence under Count Five for conspiracy to violate the narcotics laws should commence from the date of sentencing.

■ In the second prong of his attack appellant claims that he could not be convicted and sentenced for both possession of heroin for sale and transportation of heroin. We agree. In State v. Benge, 110 Ariz. 473, 520 P.2d 843 (1974), the Court stated:

"Where the jury has determined that the facts support both charges, then A.R.S. Sec. 13-1641 which prevents double punishment becomes applicable. Having found that the appellants should not have been convicted of both charges, we hold that the appellants' convictions for possession of marijuana for sale must be vacated. [citation omitted]" 110 Ariz. at 479, 520 P.2d at 849.

In State v. Benge, supra, appellant was convicted of both possession of marijuana for sale and transportation of marijuana. The only difference between State v. Benge, supra, and the case at bench, is that here the narcotic drug involved is heroin. It thus becomes necessary for us to vacate appellant's conviction of possession of heroin for sale and the sentence imposed thereon.

■ The third prong of appellant's attack relates to the conspiracy charge. The indictment charged that appellant Oscar Chavarria together with the other four co-defendants conspired to sell heroin and in furtherance of that conspiracy "transported heroin to the vicinity of 1010 South Freeway." Appellant claims that his convictions for both conspiracy and transportation of heroin were unlawful under A.R.S. Sec. 13-1641 and that it constitutes double punishment for the same crime. To support this contention he points to the case of State v. Mitchell, 106 Ariz. 492, 478 P.2d 517 (1970) wherein the court proposed the following test:

"The practical test is to eliminate the elements in one charge and determine whether the facts left would support the other charge." 106 Ariz. at 492, 478 P.2d at 520.

Appellant then reasons as follows. He correctly points out that in Arizona, for the crime of conspiracy to have been committed, there must be an agreement to commit an unlawful act coupled with an overt act. Eyman v. Deutsch, 92 Ariz. 82, 373 P.2d 716 (1962). He then points out that the fundamental element of the charge

of unlawful transportation of heroin is the transportation of the drug. Lastly, he applies the *Mitchell* test. He contends, if you eliminate the transportation of the heroin, there is no overt act to support the crime of conspiracy. We do not agree. The transportation of the heroin in this case was not the only overt act which would support the conviction of conspiracy. Care must be taken not to equate the overt act required by conspiracy with the overt act required in the crime of attempt. Whereas under the crime of attempt, mere preparation does not constitute an overt act, this is not true when dealing with the overt act required by conspiracy. The overt act may be merely a part of preliminary arrangements for commission of the ultimate crime. *People v. Buono*, 191 Cal.App.2d 203, 12 Cal.Rptr. 604 (1961). It need amount to no more than an act showing that the conspiracy has gone beyond a mere meeting of the minds upon the attainment of an unlawful object and that action between conspirators as such has begun. *State v. Depuy & Gomez*, 27 Ariz.App. 187, 552 P.2d 1202 (1976). When appellant went to get Celaya and Cordova in order to take them to Scott's residence with the heroin, he committed an overt act in furtherance of the conspiracy. Application of the *Mitchell* test does not affect this overt act.

## APPEALS OF CELAYA AND CORDOVA

### I. Insufficient Evidence

■ Appellants Celaya and Cordova claim that there is insufficient evidence to convict them of conspiracy and at the most the evidence shows that they were seen in the company of one of the conspirators. They contend there is no evidence to show that they knew the principal purpose of the conspiracy. These contentions are entirely without merit. There was sufficient evidence from which the jury could infer that the five ounces of heroin was provided by Cordova and Celaya. Accompanying Cha-

varria, their presence in the area where the sale was to take place and their stationing of their automobile within 200 yards of the motel show these appellants knew of the agreement and were active participants.

Not only was the evidence sufficient to show that appellants were guilty of conspiracy to sell heroin, but the evidence also shows that they were aiders and abettors in the transportation of the heroin, since as previously mentioned, the jury could rightfully infer that Cordova and Celaya were Chavarria's source and actually provided the heroin.

### II. Corroboration of Accomplice's Testimony

■ Appellants contend that the state failed to corroborate the testimony of Scott, an accomplice, as required by A.R.S. Sec. 13–136. We do not agree. Corroborating evidence on an accomplice's testimony is sufficient if it tends to implicate the defendant, even if it does so only to a slight degree; it need not be sufficient to establish defendant's guilt or directly connect him with the offense. *State v. Beard*, 107 Ariz. 388, 489 P.2d 25 (1971). Scott's testimony in this case was corroborated by the observations of the law enforcement officers.

### III. Severity of Sentences

Appellant Celaya was sentenced to from ten to fifteen years for possession of heroin for sale, twenty to thirty years for unlawful transportation of heroin, nine to ten years for possession of cocaine and four years' probation for conspiracy. All the prison terms were to run concurrently and the probation was to commence after all the prison sentences had been served.

■ Appellant Cordova was sentenced to ten to fifteen years for possession of heroin for sale, twenty to forty years for transportation of heroin and four years' probation for conspiracy. The prison sentences were to run concurrently and the

probation was to commence after service of the prison sentences. Appellants Celaya and Cordova contend that their sentences were too severe. We do not agree. The presentence reports indicate that appellant Cordova was a "big dealer". When consideration is given to the fact that the narcotic drug involved here was heroin and was a comparatively large quantity, we do not believe that the court abused its discretion in the sentences.

We do believe, even though these appellants did not raise the issue, that their sentences suffer from the same infirmities noted in our discussion of appellant Chavarria's sentences.

### IV. Unlawful Search of Celaya

██ When Celaya was searched he was found in possession of cocaine. He contends that his arrest was not based upon probable cause and therefore the search was illegal. This is without merit. The observations of the law enforcement officers gave them probable cause to believe that Celaya and Cordova were partic-ipating in the narcotics transaction. The search was therefore lawful.

Appellants Celaya and Cordova also contend that the court erred in refusing to order disclosure of the identity of the informant. For the reasons stated in our discussion under Chavarria's appeal this contention is without merit.

### SUMMARY

Appellants' convictions for possession of heroin for sale and the sentences thereon are vacated and set aside and their convictions of unlawful transportation of heroin, and the sentences thereon, are affirmed.

Appellants' convictions of conspiracy are affirmed but we modify the suspensions of sentence thereon to commence the running of the probationary period from January 21, 1976, the terms and conditions remaining the same.

Appellant Celaya's conviction of unlawful possession of cocaine, and the sentence thereon, are affirmed.

KRUCKER and HATHAWAY, JJ., concur.