570 P.2d 755
STATE of Arizona, Appellee,

v.

Raul GREEN and George Green, Jose Luis Fregoso Jaime, and Joseph Edward Ryan, Appellants.

No. 3869–PR.

Supreme Court of Arizona, In Banc.

Oct. 3, 1977.
Rehearing Denied Nov. 8, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Georgia B. Ellexson and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Anthony J. Abruzzo, Tucson, for appellants Green.

Edwin J. Valant, Tucson, for appellant Jaime.

Davis, Eppstein, Tretschok & Ford by Philip J. Hall, Tucson, for appellant Ryan.

HOLOHAN, Justice.

The appellants were convicted after trial by jury of possession of marijuana for sale and conspiring to transport marijuana. An appeal was taken to the Court of Appeals which vacated and set aside the charges of conspiracy as to all the appellants and the conviction of the crime of possession of marijuana as to George Green. *State v. Green, et al.*, 117 Ariz. 92, 570 P.2d 1265 (App.1977). A petition for review was taken by the state on the action of the Court of Appeals and by Raul Green as to affirmance of his conviction for possession of marijuana for sale. We granted review.

The essential facts are that on February 23, 1976 the duplex at 3951 East Fairmount, Tucson, Arizona was under surveillance by law enforcement officers. The officers observed a white pickup truck with a camper driven by appellant Joseph Edward Ryan arrive at the duplex. Ryan left the vehicle and entered the duplex through a sliding glass door at the back. After three or four minutes Ryan came out of the duplex, entered the camper shell and began pounding and hammering inside it for about 15 minutes. Appellant Alvarez Orozco arrived at approximately 1:17 p. m. He went to the back of the camper to say something to Ryan. Orozco then went into the duplex. A few minutes later Orozco and appellant Jose Jaime came out of the duplex, went to the rear of the camper and appeared to be watching what Ryan was doing inside. Appellants Raul and George Green arrived shortly thereafter. The Greens approached the others and then all went inside the duplex.

Five minutes later they all came out. Jaime was carrying a cardboard box. Ryan then entered the camper and Jaime slid the box inside. Orozco and Jaime then returned to the residence. Raul Green stayed in the back of the camper and George Green was seen on the patio walking back and forth. Orozco and Jaime left the resi-

dence again carrying boxes containing brick-like objects in blue paper. When Orozco and Jaime carried the boxes from the house to the camper, they passed within a few feet of George Green. Jaime climbed in the camper and closed the door. Orozco and Raul Green stayed at the rear of the camper and George remained on the patio near the sliding glass door. After approximately twenty minutes the camper door opened, the boxes were removed and Ryan and Jaime left the camper. Raul Green looked inside and said something to Jaime and Ryan and then the door to the camper was closed. After a few minutes Raul and George Green departed. After Orozco and Ryan left the premises law enforcement officers secured a search warrant for the duplex and found appellant Jaime hiding in a closet in the hallway. In the northwest bedroom they found 64 bricks of marijuana and a set of scales. A search of the camper revealed 91 bricks of marijuana located in a false ceiling in the camper. At trial the jury was instructed as to conspiracy, aiding and abetting and to possession of marijuana for sale.

Appellants argue that their conviction for conspiracy to transport marijuana and possession of marijuana for sale violates the double punishment prohibition of A.R.S. § 13–1641. The test to determine the application of A.R.S. § 13–1641 can be found in *State v. Mitchell*, 106 Ariz. 492, 478 P.2d 517 (1970):

"The practical test is to eliminate the elements in one charge and determine whether the facts left would support the other charge." 106 Ariz. at 495, 478 P.2d at 520.

In *State v. Celaya*, 27 Ariz.App. 564, 556 P.2d 1167 (1976) it was held that conviction for conspiracy to sell heroin and transportation of heroin was not prohibited by A.R.S. § 13–1641.

The court said:

"The transportation of the heroin in this case was not the only overt act which would support the conviction of conspiracy. Care must be taken not to equate the overt act required by conspiracy with

the overt act required in the crime of attempt. Whereas under the crime of attempt, mere preparation does not constitute an overt act, this is not true when dealing with the overt act required by conspiracy. The overt act may be merely a part of the preliminary arrangements for commission of the ultimate crime. . . . It need amount to no more than an act showing that the conspiracy has gone beyond a mere meeting of the minds upon the attainment of an unlawful object and that action between conspirators as such has begun. . . . When appellant went to get Celaya and Cordova in order to take them to Scott's residence with the heroin, he committed an overt act in furtherance of the conspiracy. Application of the *Mitchell* test does not affect this overt act." 27 Ariz.App. at 569, 556 P.2d at 1172 (citations omitted).

■ In the instant case appellant argues that because of the conviction for possession of marijuana for sale there can be no overt act to establish the conspiracy. We do not believe this argument to be convincing. Under the general law of conspiracy only one party need commit the overt act, and any overt act by any one of the conspirators may be attributed to all the members of the conspiracy. *See State v. Dupuy*, 116 Ariz. 151, 568 P.2d 1049 (1977). Viewing the facts in a light most favorable to upholding the trial court's actions, *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976), a number of different acts were alleged in the indictment as overt acts. These acts included: 1) appellant Ryan driving a vehicle owned by a coconspirator to the duplex; 2) appellants Jaime and Orozco carrying boxes of marijuana from the duplex to the vehicle; 3) placing boxes inside the camper attached to the vehicle and throwing out the empty boxes; 4) the observation by Raul Green as the marijuana was loaded into the camper; 5) George Green acting as a lookout during the loading of the camper vehicle. Once the jury found that there existed an agreement by the defendants to commit an offense, it was only necessary for the jury to find that any one of the conspirators performed an overt act to effect the object of the conspiracy. *State v. Dupuy, supra.* There was ample evidence to support the conclusion that all or any of the alleged overt acts were proved. Since the offenses involve different elements, a conviction for conspiracy to transport marijuana and possession of marijuana for sale are not prohibited by A.R.S. § 13–1641. *See State v. Celaya, supra.*

■ Although appellant George Green contends that there was insufficient evidence to convict him of the crime of possession of marijuana for sale, reversible error occurs only where there is a complete absence of probative facts to support the verdict. *State v. Mahan*, 92 Ariz. 271, 376 P.2d 132 (1962); *State v. Milton*, 85 Ariz. 69, 331 P.2d 846 (1958). The aiding and abetting statute allows an aider and abettor to be tried, prosecuted and punished as a principal. *See* A.R.S. § 13–140. In *Baumgartner v. State*, 20 Ariz. 157, 161, 178 P. 30, 32 (1919) the court said:

"The 'aiding' or 'abetting' contemplated by the statute is some positive act in aid of the commission of the offense—a force physical or moral joined with that of the perpetrator in producing it. The aider or abettor must stand in the same relation to the crime as the criminal, approach it from the same angle, touch it at the same point."

■ Apparently, the jury characterized George Green's walking on the patio as that of a "lookout." When all of the appellants entered the house at the same time, and then left shortly thereafter, the jury could have inferred that George Green was assisting the others by warning them of any potential interference by the police. It has been held that the actions of a lookout are sufficient to sustain a conviction as an aider and abettor. *See State v. Sears*, 22 Ariz. App. 23, 522 P.2d 784 (1974); *State v. Bearden*, 99 Ariz. 1, 405 P.2d 885 (1965); A.R.S. § 13–139. Thus, the jury could have made reasonable inferences from the facts that George Green aided and abetted the principals to the crime of possession for sale.

Appellant Raul Green also contends that there was insufficient evidence to convict him of possession of marijuana for sale, because he was present at the scene of the crime and did nothing more. It has been held that in the absence of preconcert, mere presence of a person does not make him an aider and abettor, *see State v. Sims*, 99 Ariz. 302, 409 P.2d 17, *cert. den.*, 384 U.S. 980, 86 S.Ct. 1880, 16 L.Ed.2d 691 (1966). However, in the instant case the evidence showed that Raul Green went into the duplex with all the other appellants, and after leaving the building stood by the camper, and watched the marijuana being loaded into the camper. Furthermore, the facts indicate that after appellants Ryan and Jaime left the camper, Raul Green looked inside, said something to Ryan and Jaime and thereafter the camper door was closed. It is a reasonable inference from the facts that appellant Ryan was supervising the loading of the marijuana pursuant to a plan that was agreed upon while all the appellants were in the duplex. Because the jury characterized Ryan's conduct in this fashion, the jury's inference that appellant Raul Green was an aider and abettor was proper. *See State v. Hernandez*, 112 Ariz. 246, 540 P.2d 1227 (1975).

The judgment of the trial court is affirmed. The opinion of the Court of Appeals is modified in accordance with the views expressed in this opinion and those parts of the opinion of the Court of Appeals which are not in conflict with this opinion are approved.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.