627 P.2d 721

**STATE of Arizona, Appellee,**

v.

**Charles Anthony VERIVE, Appellant.**

**No. 1 CA–CR 4549.**

Court of Appeals of Arizona,
Division 1,
Department B.

March 17, 1981.

Rehearing Denied April 8, 1981.

Review Denied April 21, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Division, and Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

## OPINION

HAIRE, Presiding Judge.

This is an appeal by Charles Anthony ("Carl") Verive (hereinafter "defendant") from his convictions on charges of attempting to dissuade a witness and conspiracy to dissuade a witness. The convictions were based on jury verdicts rendered after a six day trial.

The underlying facts may be stated simply. Howard Woodall had filed a false affidavit with a trial court in relation to civil litigation. Lee Galvin filed an affidavit exposing Woodall's perjury. Upon learning of Galvin's cooperation with authorities in regard to exposing the perjury, Woodall and defendant agreed that defendant would go to Galvin's home and beat Galvin in an effort to dissuade him from becoming a witness against Woodall. In return for this beating, defendant would receive from Woodall $900 and a motorcycle. On December 3, 1973, defendant drove to Galvin's home accompanied by one Mr. Baugh with whom defendant had been drinking. Defendant confronted Galvin in the doorway of the house, saying: "Do you know Howard Woodall? Well, he sent us." Defendant then proceeded to beat Galvin. In response to the scuffle, Galvin's wife started screaming and his son intervened to rescue him.

A few days after this incident defendant and Woodall were arrested by federal authorities on federal charges of witness tampering. Woodall posted bail and was released within a day. Then, Woodall provided defendant with bail money with which defendant secured his release. In 1974, the federal charges were dismissed.

In 1978, Woodall became willing to testify against defendant, after having secured his own immunity from prosecution. The prosecution witnesses were, among others, Mr. Baugh, Galvin's son, Galvin's wife, Woodall's wife, and John Harvey Adamson. Defendant presented no evidence, relying almost exclusively on impeaching the state's witnesses, Howard Woodall and John Harvey Adamson.

## THE GRAND JURY PROCEEDINGS

Defendant first contends that the trial court erred in denying his timely filed [1] motion for a new finding of probable cause made pursuant to Rule 12.9, Rules of Criminal Procedure, 17 A.R.S. Defendant asserts that his substantive due process rights were violated during the grand jury proceedings.

Before indicting defendant, the grand jury heard testimony of Galvin and Alonzo McCracken, an investigative officer. Woodall did not testify before the grand jury; however, his testimony was communicated through McCracken. Defendant argues that the prosecutor did not reveal several exculpatory matters to the grand jury. First, he objects to the prosecution's failure to disclose Woodall's past history of perjury. Second, he contends that the prosecution knowingly withheld statements, made prior to those presented to the grand jury, in which Woodall denied knowing anything about the alleged witness tampering. Third, defendant protests the prosecution's failure to disclose the 1974 dismissal of federal witness tampering charges.

■ The propriety of withholding exculpatory material from a grand jury has been discussed in opinions at both state and federal levels.[2] However, we will not deter-

1. A motion filed under 12.9, Rules of Criminal Procedure, 17 A.R.S., is the only mode for challenging a grand jury's proceedings. *State v. Smith*, 123 Ariz. 243, 599 P.2d 199 (1979).

2. *See, e. g., United States v. Romero*, 585 F.2d 391 (9th Cir. 1978) (affirmed conviction on the basis that allegedly exculpatory evidence withheld from grand jury did not clearly negate guilt or undermine the authority of the grand jury to act); *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974) (reversed conviction be-

cause prosecution had not revealed to trial court that grand jury witness had given perjured testimony to the grand jury); *Johnson v. Superior Court of San Joaquin County*, 15 Cal.3d 248, 539 P.2d 792, 124 Cal.Rptr. 32 (1975) (issued writ of prohibition restraining superior court from proceeding to trial by indictment because of prosecutor's failure to present accused's testimony which tended to explain away the charges); *State v. Herrera*, 93 N.M. 442, 601 P.2d 75 (1979) (trial court's dismissal of indictment, without prejudice, af-

mine the propriety of withholding evidence from a grand jury on an appeal from a subsequent conviction. *See State v. Neese*, 126 Ariz. 499, 616 P.2d 959 (App.1980). The trial jury, after a full trial and complete presentation of the purportedly exculpatory matters, found the defendant guilty beyond a reasonable doubt. We held in *Neese* that to obtain review of the denial of a motion for a new finding of probable cause, the defendant must seek relief via special action, prior to trial. With one exception,[3] none of the cases[4] cited by appellant involve an appeal from a conviction; rather, the procedural posture of each decision was a pretrial challenge seeking essentially an extraordinary writ to quash the grand jury indictment. We hold that defendant cannot, by appeal from a conviction, obtain review of matters relevant only to the grand jury proceedings that had no effect on the subsequent trial.

## THE PRESENCE OF JOHN HARVEY ADAMSON

Defendant next argues that the trial court abused its discretion under Rule 403, Arizona Rules of Evidence, 17A A.R.S., by permitting the state to call John Harvey Adamson as a witness and by allowing him to testify in his own name. Adamson testified in regard to a conversation with defendant, describing defendant's admission as follows:

"[H]e told me that he had been hired by a fellow by the name of Howard Woodall to beat a fellow by the name of Larry,[5] who lived in either Mesa or Tempe; that this fellow, Larry, was going to testify against Howard Woodall, and that Carl was hired to go out there and beat him up.

\* \* \* \* \* \*

"He said that he was happy with the way that Howard Woodall handled the bail procedures for posting the bail money; that he got right out and that there wasn't any problem. And he said he was impressed with the way Howard handled it." (Footnote added).

This admission was clearly relevant. Defendant does not dispute this. He argues, however, that several factors, taken in combination, precluded allowing John Harvey Adamson to appear as a witness to give this testimony. His arguments are premised on the assumption that Adamson was significantly more infamous than the other witnesses at the trial.[6] In consequence of Adamson's presence, the media's coverage of the defendant's trial was presumably greater than it otherwise would have been, with this increased coverage allegedly creating a "carnival atmosphere" and an increased probability of jury speculation with respect to defendant's background. Moreover, although several of the witnesses had been heavily involved in crime and had received significant publicity, appellant argues that Adamson had greater name recognition and the jury was more likely to associate defendant with organized crime and a criminal history because of his acquaintance with Adamson. Finally, defendant contends that the admission to which Adamson testified was cumulative because several other witnesses had testified as to other admissions made by defendant.

firmed where the state had knowingly withheld exculpatory material); *Strehl v. District Court of Salt Lake County*, Utah, 558 P.2d 597 (1976) (issued writ of prohibition prohibiting district court from proceeding against accused where accused's testimony, which had led to prior dismissal of same charges at a preliminary hearing was not presented to the grand jury).

3. *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974); see footnote 2, *supra*.

4. All of the cases cited by defendant are discussed in footnote 2, *supra*.

5. The victim of the beating from which the charges against defendant arose was Mr. Galvin. Customarily he is referred to as "Lee" Galvin. In this statement, Adamson said "Larry", but later changed the reference to "Lee". Furthermore, through Woodall, the prosecution established that, since Galvin was the only witness Woodall had hired Verive to beat Verive's admission must have had reference to the Galvin incident (see discussion, *infra*).

6. John Harvey Adamson had received extensive media exposure and publicity because of murder charges against him resulting from the bombing death of a newspaper reporter.

■ We reject defendant's arguments and defer to the trial court's evaluation of the relative merits of permitting John Harvey Adamson to testify. To reject relevant evidence on the basis of unfair prejudice and cumulativeness is within the discretion of the trial court. We will only review for abuse. *State v. Carriger*, 123 Ariz. 335, 599 P.2d 788 (1979), *cert. denied*, 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1980).

■ We first address the defendant's contention that Adamson's testimony was cumulative. Since no one other than Adamson was present during the conversation, this evidence would not have been presented by any other witness. The probative value of an admission made to a person otherwise not entangled in the alleged criminal activities of the witness is obvious. We recognize that several eyewitnesses testified regarding the events of the actual beating incident. However, Adamson's testimony was particularly significant because it provided independent corroboration of Woodall's testimony that the beating was administered pursuant to an agreement and was an attempt to dissuade Galvin from testifying against Woodall.

■ That the additional media coverage precipitated by Adamson's presence created an increased probability that the jury would speculate regarding defendant's background is not substantiated by the record. Although the record shows that the media covered the trial, it is not clear that Adamson's presence materially increased this coverage. Moreover, through repeated admonition and extensive voir dire the trial court was thorough in preventing the jury's exposure to, or influence by, any such increased publicity. Permitting Adamson to testify under these circumstances was not an abuse of the discretion vested in the trial judge by Rule 403.

The second aspect of the unfair prejudice argument is that defendant's association with Adamson would lead to jury speculation regarding defendant's criminal background. However, the trial court was meticulous in voir dire and instruction to assure that no juror would judge defendant based on his associations with Adamson, or any of the other state witnesses. Moreover, at trial, defendant's only defense was to impeach these witnesses by exposing their criminal pasts. Defendant was associated with all of them. The trial court did not abuse its discretion by permitting but one more of defendant's criminal associates to testify against him in order to reveal defendant's highly probative admission.

■ As an alternative to excluding Adamson from the trial, defendant contends on appeal that Adamson should have testified under an assumed name. However, defendant's trial counsel abandoned this idea characterizing it as "an exercise in futility". The strongest motive for exposing Adamson's background lay with defendant, whose primary defense tactic was to impeach Adamson's credibility by exposing his past criminal record. We find no abuse of discretion in the trial court's decision to have Adamson testify under his true name.

## JURY VOIR DIRE

Having found no error in the trial court's admission of Adamson as a witness, we next consider the propriety of the court's voir dire of the jury. Appellant argues that the trial court erred by exposing the criminal history of witnesses Adamson and Robison to the jurors during individual voir dire. This, according to appellant, deprived him of a fair trial.

■ The purpose of jury voir dire examination is to unveil a juror's prejudices so that the parties can exercise intelligently their peremptory challenges and challenges for cause. *State v. Melendez*, 121 Ariz. 1, 588 P.2d 294 (1978); Rule 18.5(e), Rules of Criminal Procedure, 17 A.R.S. The scope of voir dire examination is left to the sound discretion of the trial court. *State v. Melendez, supra; State v. Smith*, 114 Ariz. 415, 561 P.2d 739 (1977). Defendant's trial counsel expressly acknowledged the substantial risk that individual jurors would eventually link Robison and Adamson to the murder of reporter Don Bolles. At trial, defendant's counsel agreed with the trial

court that the best method for assuring impartial jurors was to use the pretrial voir dire to question each potential juror regarding prejudice that this knowledge might engender. Therefore, we find no error.

## INSINUATIONS OF PRIOR BAD ACTS

Defendant has raised several instances of the prosecution or its witnesses alluding to defendant's prior bad acts.

At trial the prosecution questioned the victim, Galvin, regarding his discussion with an investigating officer. Galvin first described the assault to the officer. Then the following exchange took place:

"Q [BY THE PROSECUTOR]: What else did you tell him?

"A I told him that it was Carl. I couldn't think of Carl's last name right at the time. I told him it was Carl that had worked for Woodall. *And they showed me mug shots.* And I identified Carl Verive. I knew his last name and couldn't think of it right at the time. I did explain it was Carl." (Emphasis added).

Defense counsel did not object or move to strike this mug shot testimony, nor request any curative instruction. Defendant contends that the mere mention of "mug shot" is fundamental error, requiring reversal regardless of the failure to object or otherwise afford the trial court an opportunity to cure the error, citing: *State v. Moore*, 108 Ariz. 215, 495 P.2d 445 (1972); *State v. Jacobs*, 94 Ariz. 211, 382 P.2d 683 (1963); and *State v. Cumbo*, 9 Ariz.App. 253, 451 P.2d 333 (1969). We reject defendant's interpretation of these cases as applied to the facts of the present case.

We have reviewed the Arizona cases discussing testimonial reference to "mug shots". In *Jacobs, supra*, a police officer testified that a "mug shot" had been shown to a state's witness for the purpose of identifying the defendant. The defense voiced no objection. The Supreme Court concluded that no objection was required to preserve the asserted error for review under the circumstances. The identification was made on the day of defendant's arrest on

the charges being tried, therefore there was a high likelihood of the jury assuming that the "mug shots" were taken pursuant to a *prior* arrest. The state conceded that the mug shots were, in fact, taken at a prior arrest; therefore no objection, motion to strike or jury instruction could have erased the suggestion to the jury that the defendant had a prior criminal record.

In contrast to *Jacobs* and *State v. Moore, supra*, the "mug shot" reference in the present case was not made by a police investigator. It was not necessary to answering the prosecution's question. No question of prosecutorial overreaching is involved. Furthermore, the identification took place several days after the crime, which lessens the probability that the jury would have associated the mug shot with an arrest on another charge. There is no factual record upon which we can conclude that the "mug shot" was actually taken pursuant to an arrest on prior charges. Absent such information, we are not in a position to determine whether the trial court could have truthfully cured the prejudicial impact of the reference by instructing the jury that the mug shot was taken pursuant to the present charges. This factual question could have been developed had the defense counsel afforded the trial judge an opportunity to consider the matter, as was done in *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974), *cert. denied*, 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975). We hold that under these circumstances, the mere reference to "mug shot" does not alter the general requirement that the defendant object to error to preserve it for appeal.

In concluding that an objection is sometimes required to obtain review of a reference to mug shots, we have considered several cases, in addition to *Jacobs, supra*, wherein no objection was made to such a reference. In *State v. Ybarra*, 97 Ariz. 200, 398 P.2d 905 (1965), no objection was made to the "mug shot" reference, but whether an objection was necessary was not decided. Rather, the court affirmed the conviction on the basis that the remark was not preju-

dicial. This court, in *State v. Cumbo, supra*, discussed references to "mug shots". However, the discussion was general in nature, was not the basis for the reversal, and did not address the necessity of an objection to preserve the error. In *State v. Cross*, 123 Ariz. 494, 600 P.2d 1126 (App.1979), Division 2 of this court reversed a conviction on the basis of a "mug shot" reference to which no objection had been made at trial. Unfortunately, however, the *Cross* opinion provided no factual detail upon which to determine its application to the circumstances of the present case. We find no conflict between any of these cases and our holding.

Even if the "mug shot" was actually taken pursuant to a prior arrest, and a proper objection had been made, we find that any error was harmless, applying the following test:

"[H]ad the error not been committed was there a reasonable probability that the verdict might have been different?" *State v. Ybarra*, 97 Ariz. 200, 398 P.2d 905 (1965).

The evidence against defendant was overwhelming. Galvin, Galvin's wife, Galvin's son and Baugh were eyewitnesses to the beating. Woodall, Adamson, Woodall's wife, and Baugh testified regarding the conspiracy and defendant's several admissions. Defendant presented no evidence or witness in his defense. He had no alibi, and argued no mistake in identity. Having reviewed the record in its entirety, we find that one reference to a "mug shot" in this six day trial was harmless beyond a reasonable doubt.

The second alleged allusion to defendant's prior bad acts took place during the prosecution's examination of Woodall, when the prosecutor asked:

"Let me ask you this, Mr. Woodall: How many times did you hire Mr. Verive to beat up a witness?"

Absent further explanation, this question would be egregiously improper prosecutorial misconduct. However, here the question was asked in anticipation of a negative response and for a proper purpose. Adamson was expected to testify regarding an admission made by defendant, previously quoted in this decision. Adamson's accounts of the admission had sometimes referred to the victim as "Lee" and sometimes as "Larry". The prosecutor was attempting to establish that Woodall had never hired defendant to beat any other witness, thereby establishing that the admission to Adamson was with reference to the present charges.

The defendant's counsel objected and requested a mistrial before the witness answered. After argument by both parties, the court denied the mistrial and itself addressed the witness as follows:

"THE COURT: Mr. Woodall, let me catch you up on where we left off. Let me restate the question to you. The question is: Did you ever hire Mr. Verive to beat up any other witness, other than Mr. Galvin? Just yes or no as to whether you did or didn't?

"THE WITNESS: No."

We conclude that the question was properly related to a trial issue, and we find no error under the circumstances.

Finally, defendant asserts that the judgment should be reversed because various trial testimony allegedly alluded to organized crime. We note that defendant's appellate counsel does not specifically state how these alleged allusions to various people's involvement in organized crime affected the defendant. Having reviewed all of the testimony to which defendant's counsel has directed our attention, we find that at trial he did not object to any of it. If any of it constitutes error, waiver is manifest. *See State v. Wilson*, 113 Ariz. 308, 553 P.2d 235 (1976).

### DOUBLE PUNISHMENT AND DOUBLE JEOPARDY

The grand jury indictment against defendant charged him with two counts:

(1) Conspiracy, second degree; A.R.S. §§ 13–331 B and 13–1825 (Repealed, eff. Oct. 1, 1978), and

(2) Attempt to dissuade a witness, A.R.S. §§ 13–1825 and 13–108 (Repealed, eff. Oct. 1, 1978).

The jury rendered guilty verdicts on both counts, and accordingly, the trial court entered judgments of guilt on the conspiracy and attempt charges and sentenced defendant to concurrent nine to ten year terms.

On appeal defendant argues for the first time that to convict and sentence defendant on both attempt and conspiracy violated the statutory proscription against double punishment, A.R.S. § 13–1641 (Repealed, eff. Oct. 1, 1978), as well as constitutional prohibitions against double jeopardy.

 We first consider whether the two convictions violated A.R.S. § 13–1641, which provides as follows:

"Different punishments for same offense; limitation and bar

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." (Repealed, eff. Oct. 1, 1978).

Violations of this statute can be raised for the first time on appeal. *State v. Mills*, 96 Ariz. 377, 396 P.2d 5 (1964). The statute's purpose is to preclude attaching more than one punishment to one act. The test for determining whether one act of the defendant has been punished more than once was established in *State v. Tinghitella*, 108 Ariz. 1, 491 P.2d 834 (1971). Denominated as the "identical elements test", it requires that, after eliminating the evidence necessary to support one of the charges, the remaining evidence must be sufficient to support the remaining charge. *State v. Davis*, 119 Ariz. 529, 582 P.2d 175 (1978); *State v. Tinghitella, supra.* See also *State v. Gracia*, 121 Ariz. 417, 590 P.2d 1363 (1979). The test focuses upon the evidence actually presented at the trial, to establish that each punishment could have related to a different act. That the punishable acts occur within a very short time span is not material to the application of this test. *State v. Tinghitella, supra.*

To apply this test one must determine what elements must be proven to satisfy each charge and whether each charge can be supported without using the same act to prove more than one charge.

 An essential element of conspiracy is an unlawful agreement with one or more persons to engage in the commission of a felony or to cause the commission of a felony. A.R.S. § 13–331 (Eff. 1971, repealed eff. October 1, 1978); *State v. Dupuy*, 116 Ariz. 151, 568 P.2d 1049 (1977). Also essential to a conviction for a second degree conspiracy is proof of some overt act to effect the object of the conspiracy. A.R.S. § 13–332 (Repealed, eff. Oct. 1, 1978); *State v. Dupuy, supra.* At least one overt act must be expressly alleged in the indictment and proved. A.R.S. § 13–333 (Repealed, eff. Oct. 1, 1978).

 Defendant argues that the state relied upon the same overt act to prove both the attempt and the conspiracy. If only one overt act were alleged in the conspiracy indictment, this same act could not be used to establish an essential element of any other charge. *State v. Gracia, supra.* However, two overt acts were specifically alleged in support of the conspiracy charge:

"(1) CARL VERIVE aka CHARLES ANTHONY VERIVE struck LERLIA LEE GALVIN with his fist on or about the 1st day of DECEMBER, 1973;

"(2) CARL VERIVE aka CHARLES ANTHONY VERIVE or JAMES A. ROBISON went to 948 West 10th Street, Mesa, Arizona."

Either of these acts was sufficient to support the conspiracy charge; only one was required. The conspiracy charge was supported by proof that defendant Verive went to Galvin's home pursuant to the agreement to dissuade Galvin from testifying. Eliminating this evidence, there remained evidence of an overt act sufficient for a conviction of attempt. This meets the *Tinghitella* test. Therefore, we find no violation of A.R.S. § 13–1641.

This, however, does not end our inquiry. Defendant has also asserted that to convict him of both attempt to dissuade a witness and conspiracy to dissuade a witness violates his rights under the double jeopardy clause of the fifth amendment to the United States Constitution, which provides:

"[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

Similarly, Article 2, § 10 of the Arizona constitution contains a provision regarding double jeopardy which states:

"Self-incrimination; double jeopardy

"No person shall ... be twice put in jeopardy for the same offense."

Defendant contends that to convict him of both attempt and conspiracy to dissuade a witness violates one or both of these provisions.

■ Assuming that either of these provisions applies to multiple convictions arising from a single trial, we find that neither of them has been violated. In this single trial context, our concern is limited to whether the charges upon which the defendant is convicted are really the same offense, or, of equal importance, whether one of the charges is a lesser included offense of another. Under Arizona law, an offense is lesser included when the greater offense cannot be committed without committing the lesser offense. *State v. Dugan,* 125 Ariz. 194, 608 P.2d 771 (1980); *State v. Morgan,* 128 Ariz. 362, 625 P.2d 951 (App.1981). The federal test is substantially the same and has been stated as follows:

"The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision re-

quires proof of an additional fact which the other does not . . . .' "

*Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977).

Under both the state and federal tests the particular facts used to satisfy the elements in any given case are not relevant to the inquiry. The tests are based upon the statutory elements of offense. The United States Supreme Court has discussed this matter as follows:

"*Blockburger* requires that courts examine the offenses to ascertain 'whether each provision requires proof of a fact which the other does not.' Id., 284 U.S. at 304, 52 S.Ct. at 182. As *Blockburger* and other decisions applying its principle reveal, the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.' [some citations omitted]. *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 [n. 17], 43 L.Ed.2d 616 (1975)."

*See also, Brown v. Ohio, supra.*

The Arizona courts have treated the test for a lesser included offense similarly. In *State v. Laffoon,* 125 Ariz. 484, 610 P.2d 1045 (1980), the Arizona Supreme Court stated:

"The elements of the crime as prescribed in the statute determine whether a crime is a lesser included offense of a greater offense, not the facts of a given case." 125 Ariz. at 487, 610 P.2d at 1048.

■ Generally, a conviction of conspiracy does not preclude the simultaneous conviction of the substantive crime contemplated by the conspiracy. The common law doctrine that the substantive offense, if a felony, is merged in the conspiracy has been abandoned. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *State v. Gracia, supra.* If, in addition to being convicted of conspiracy to dissuade a witness, defendant had been con-

victed of the completed crime of dissuading the witness, we would not hesitate to affirm convictions as to both. Each of those crimes includes as element that the other does not. Conspiracy requires an agreement; dissuading a witness does not. Dissuading a witness requires a successful dissuasion; conspiracy does not. Therefore, it is permissible for the legislature to attach criminal responsibility to each of those distinct crimes.

 However, here, both of defendants' offenses were inchoate. *Successful* accomplishment of the intended result (i. e., dissuasion) was not required by either. Therefore, was have carefully considered whether this distinction affects whether attempt to dissuade a witness is a lesser included offense of conspiracy to dissuade a witness. The elements of attempt to dissuade a witness are: 1) the intent to dissuade the witness, and 2) an overt act in furtherance of that intent. Conspiracy to dissuade a witness, second degree, requires: 1) the intent to dissuade the witness, 2) an overt act, and 3) an agreement between two or more people. Unless the overt act required to establish an attempt is significantly different than the act required to establish a conspiracy, attempt to dissuade a witness would be a lesser included offense of conspiracy to dissuade a witness.

Without determining the exact parameters of the overt act requirement of conspiracy and attempt, we conclude that an act which would support a conspiracy conviction would not necessarily be sufficient to support an attempt conviction. Therefore, the attempt is not a lesser included offense of conspiracy. A conspiracy to dissuade can be committed without committing an attempt to dissuade.

 The primary focus of the crime of conspiracy is the agreement itself, the collusion, the secrecy and the resulting threat to society that such criminal liaisons create. *See State v. Dupuy, supra.* The act is required as a method of showing that some step has been taken toward executing the illicit agreement. *State v. Dupuy, supra.* Any action sufficient to corroborate the existence of the agreement and to show that it is being put into effect is sufficient to support the conspiracy. In contrast, the crime of attempt focuses more directly upon the *unequivocal nature of the steps* taken toward consummating the intended crime. In attempt, the act for which the defendant is held criminally responsible, must be more than preparatory. Perkins, in his treatise on criminal law, concludes that the "overt act" in a conspiracy "need not amount to an attempt to commit the crime which is the object of the combination." Perkins, Criminal Law, 618 (2d ed. 1968).

 That the overt act required for a conspiracy is different than that required for an attempt has been recognized in Arizona. In *State v. Celaya*, 27 Ariz.App. 564, 556 P.2d 1167 (1976), the court stated:

"Care must be taken not to equate the overt act required by conspiracy with the overt act required in the crime of attempt. Whereas under the crime of attempt, mere preparation does not constitute an overt act, this is not true when dealing with the overt act required by conspiracy. The overt act may be merely a part of preliminary arrangements for commission of the ultimate crime. *People v. Buono*, 191 Cal.App.2d 203, 12 Cal. Rptr. 604 (1961). It need amount to no more than an act showing that the conspiracy has gone beyond a mere meeting of the minds upon the attainment of an unlawful object and that action between conspirators as such has begun. [Citation omitted]."

27 Ariz.App. at 569; 556 P.2d at 1172.

Perkins explains further:

"The function of the 'overt act' is quite different in the two offenses. In the case of attempt the act must go beyond preparation because the attempt is deemed a punishable segment of the crime intended. But if the statute requires an 'overt act' for conviction of conspiracy, whether such act is held to be a part of the conspiracy or only required evidence thereof, the purpose of the requirement is merely

to afford 'a *locus poenitentiae*, so that before the act done one or more of the parties may abandon their design, and thus avoid the penalty prescribed by the statute.'" (Footnotes omitted). Perkins, Criminal Law 618 (2d ed. 1969).

We conclude that conspiracy to dissuade a witness and attempt to dissuade a witness are separate and distinct offenses. Each offense requires proof of an element that is not required to prove the other. Conspiracy requires an agreement. Attempt requires an act beyond mere preparation. Neither is a lesser included offense of the other. We find no constitutional or statutory infirmity in the convictions or sentences imposed.

The judgment and sentences of the trial court are affirmed.

JACOBSON and EUBANK, JJ., concur.