[Criminal No. 699.   Filed November 4, 1929.]

[281 Pac. 601.]

ED CARTER and WILLIAM JONES, Appellants,
v. STATE, Respondent.

Mr. Herman Lewkowitz, for Appellants.

Mr. K. Berry Peterson, Attorney General, Mr. Lloyd J. Andrews, Assistant Attorney General, and Mr. George T. Wilson, County Attorney, for the State.

ROSS, J.—The defendants Carter and Jones were informed against by the county attorney for the crime of conspiracy. They were tried before a jury and convicted. They appeal from the judgment of conviction and also from the order of the court overruling motion for a new trial. They assign as grounds for reversal that the information does not state facts sufficient to constitute a public offense, and that such information fails to comply with the requirements of sections 934, 935 and 936 of the Penal Code of 1913. These claimed defects in the information were raised by demurrer, which was overruled.

Defendants also assign that the verdict is contrary to the law and the evidence.

Omitting qualifying epithets, the charge in the information is stated as follows: That Ed Carter and Will Jones, on or about May 14th, 1928, at Maricopa county, Arizona, with intent to violate the law, did conspire and agree together to prevent the due administration of the law of Arizona, and the ordinances of the city of Phoenix, in this, to wit, the said Carter and Jones did conspire, combine, and agree together to open and conduct gaming and gambling houses in Phoenix, with intent to violate the ordinances of Phoenix and the laws of Arizona; that in furtherance of said unlawful agreement and intent said Carter and Jones did then and there conspire and agree together to pay to one Del Perry the sum of fifty dollars per month during the summer months and one hundred dollars per month during the winter months of the year 1928 for immunity from arrest and prosecution in conducting said gaming and gambling houses; and in furtherance of the said unlawful agreement and intent the said Carter and Jones did on said fourteenth day of May, 1928, go to the home of the said Del Perry at Phoenix, and did then and there, with the knowledge of them, the said Carter and Jones, that they were violating the law, *propose to pay to the said Del Perry* the said sum of fifty dollars per month during the summer months and the said sum of one hundred dollars per month during the winter months to secure for them immunity from arrest and prosecution in the conducting of said unlawful games and gambling.

"That said conspiracy to commit a crime, and all of the unlawful agreements, as aforesaid, was done with the knowledge then and there of the said Ed Carter and Will Jones that said games and gambling were and are in direct violation of the laws of the State of Arizona and the ordinances of the City of Phoenix. . . . "

This information is drawn under section 168 of the Penal Code. It will be noted that this section enu-

merates five circumstances under which the crime of conspiracy may be committed. It is difficult to determine whether this information was intended to be drawn under subdivision (1) or subdivision (5) thereof. Omitting the rest of said section it states:

"If two or more persons conspire:
"(1) To commit any crime; . . .
"(5) To commit any act . . . for the perversion or obstruction of justice or due administration of the laws; they are punishable," etc.

We agree with counsel that if this information states any offense under the law it is that the defendants conspired to commit a crime, and that the allegation about the "due administration of the law" is surplusage.

It is first claimed that the description of the object of the conspiracy as a combination and agreement "to open and conduct gaming and gambling houses" is not a sufficient or any description of an act forbidden by any law of the state. In other words, that there exists in this state no law making it a crime to open and conduct a gambling house, and that therefore if defendants did agree and combine to open and conduct gambling houses it was not a crime.

Our attention has not been called to any ordinance of the city of Phoenix making it unlawful to open and conduct gaming and gambling houses. Both parties have presented the case here on the assumption that what is charged against defendants was, if anything, an offense against the state law. We shall therefore treat the allegations *contra* city ordinances as surplusage.

The controlling law, then, at the time this conspiracy is alleged to have taken place, is found in sections 319, 320, 321 and 322 of the Penal Code of 1913, as amended by Referendum, Laws of 1919, page 12. Section 319 makes it a misdemeanor to deal, carry on or open, or cause to be opened, or to con-

duct certain games, therein enumerated, when played for money, checks, credits, or any other representative of value. Section 321 makes the same acts in connection with banking or percentage games a misdemeanor. If "to open and conduct gaming and gambling houses" imports in a general way the same thing as "to open and conduct" one, or any, or all of the games prohibited by sections 319 and 321, we think the information sufficiently advised defendants of what they were charged, and sufficiently identified the act so that upon another prosecution they could plead jeopardy. The two expressions mean, for all practical purposes, the same thing. Sections 320 and 322 recognize the buildings or places where games of chance are played for stakes as gambling houses.

The rule to test whether the description of the object of the conspiracy is sufficient is very reasonably and fairly stated in *State* v. *Soper,* 118 Iowa 1, 91 N. W. 774, 775, as follows:

"It is well settled that it is not necessary in an indictment for conspiracy to commit a crime to describe the crime intended to be committed with the accuracy or detail essential in charging the commission of the crime itself, and that if, in the indictment for conspiracy the crime charged to have been intended is stated in accordance with the statutory description thereof, it is sufficient. (Citing cases.) In other words what is required in the indictment for conspiracy to commit a crime is a correct designation of the crime as known to the common law or specified by statute, as the case may be, which the defendants are charged to have intended to commit, and not the allegation of acts which, if committed, would have constituted such crime."

It is next claimed that the information is defective in that it fails to allege any act, besides the agreement, done to effect the object of the conspiracy. Under sections 169 and 1045 of the Penal Code, ex-

cept where the object is to commit a felony upon the person of another, or to commit arson, or burglary, one or more overt acts must be alleged in the information and proved to make out the completed offense of conspiracy. While the unlawful combination and agreement is the gist of the crime (*Territory* v. *Turner*, 4 Ariz. 290, 37 Pac. 368), "some act" by one or more of the conspirators "to effect the object" of the conspiracy must be alleged and proved. It does not appear to us that the act charged in the information was in the least calculated to effect the object, but was, if anything, an ingredient of the conspiracy. It is alleged that defendants agreed together "to. pay to one Del Perry" certain moneys for immunity from arrest and prosecution. This was a. condition or circumstance of the conspiracy and not any more overt than the 'alleged agreement to open and conduct a gambling house. There is no allegation that the defendants ever saw or communicated with Del Perry concerning their gambling scheme. The allegation intended by the pleader to cover that feature of the charge is that defendants did go to Del Perry's house and did then and there, knowing they were violating the law, "*propose to pay to the said Del Perry* the said sum . . . to secure for them immunity from arrest and prosecution." But this is not an allegation that they *proposed to Del Perry to pay him* such money for immunity. From the language used the proposal might have been between themselves, or to some member of Del Perry's family, or to Del Perry's house.

But even if the allegation were of an offer to Del Perry to pay him said sums for protection, we cannot see how such offer could be called an "act done to effect the object" of the conspiracy in the absence of a showing or allegation that Del Perry possessed, because of his connections or situation, ability to administer the desired immunity bath. Surely such an

offer to one situated and motivated like themselves would not tend to effect their object. It would be merely a solicitation to join the conspiracy and share in its unlawful spoils. It might and doubtless would be different if the information showed by proper allegation that Perry, because of his political position or connections, had or could exercise some influence over those officers whose duty it is to arrest and prosecute violators of the law, as that he was a peace officer, or officially identified with the prosecution of those charged with crime. While the allegations of the information assume that Perry possessed the power of suppressing or defeating the law's enforcement as with a magic wand, as a matter of fact neither he nor any other private citizen has any such power. The only way Perry could secure defendants' immunity would be by a system of barricades, sentinels and alarms, or by the bribery of the peace and prosecuting officers of the city, county, and state, and in either case he would be a conspirator along with the defendants. Any way the allegations are viewed, the overt act relied upon was not done to effect the object but to augment the membership of the conspiracy.

We are convinced that the indictment does not state facts sufficient to constitute a public offense, and does not conform with paragraphs 934, 935 and 936 of the Penal Code in that it fails to set out the particular circumstances of the offense charged, or, in other words, to allege any overt act to effect the object of the conspiracy.

This conclusion makes it unnecessary to pass on the other assignments.

The judgment and sentence is reversed and the cause remanded, with directions to sustain the demurrer.

LOCKWOOD, C. J., and McALISTER, J., concur.