568 P.2d 1049

**STATE of Arizona, Appellee,**

v.

**Albert DUPUY and Roberto A. Gomez, Appellants.**

**No. 3711–PR.**

Supreme Court of Arizona,
In Banc.

July 6, 1977.

E. Leigh Larson, Santa Cruz County Atty. by Roberto C. Montiel, Chief Deputy County Atty., Nogales, for appellee.

Bolding, Oseran & Zavala by Richard Oseran, Tucson, for appellant Dupuy.

Solsberry & McDonald by Kerry A. McDonald, Nogales, for appellant Gomez.

STRUCKMEYER, Vice Chief Justice.

Appellants, Albert Dupuy and Roberto A. Gomez, appeal from convictions for conspiracy to possess for sale and to transport marijuana in violation of A.R.S. § 13–331. The Court of Appeals reversed, 27 Ariz. App. 41, 550 P.2d 1083 (1976), but affirmed on rehearing, 27 Ariz.App. 187, 552 P.2d 1202 (1976). We accepted review pursuant to Rule 47(b), 17A A.R.S., Rules of the Supreme Court. Decisions of the Court of Appeals vacated. Judgments of convictions affirmed.

On April 3, 1975, three undercover Department of Public Safety narcotics agents learned from Jacob Jordan that he and others would attempt to smuggle a large amount of marijuana across the Arizona-Mexico border that night. The agents drove Jordan to the apartment of Deborah Edwards, who, according to Jordan, was going to bring the marijuana from Nogales, Arizona to Tucson after it was smuggled into the United States. The agents then drove Jordan and Edwards to the Plaza International Hotel in Tucson where Jordan said he was going to meet someone called "Albert." Jordan thereafter was seen speaking with appellant Gomez. Jordan and Edwards drove away from the hotel in a white Toyota automobile.

The white Toyota was followed by the agents to the Don Juan Motel in Nogales, Arizona, where Edwards went into a room. At about 10:00 p. m., a camper-truck was observed entering a parking lot behind the motel and several other persons were seen entering Edwards' room. One was Gomez. A second man was wearing a sheepskin type jacket with fleece lining around the collar and pockets and at the bottom. Later, when Dupuy was arrested he was wearing such a jacket. All four persons remained in Edwards' room for about fifteen minutes, then came out and went to the rear parking lot. A white truck then left the motel parking lot followed by the camper-truck. Both drove away in the direction of Tucson. At about 10:30 p. m., the agents stopped the camper-truck at Milepost 14. In it were Gomez, Dupuy and Jordan. The white truck was stopped at Milepost 20. It was being driven by Deborah Edwards. In the white truck were 49 kilos of marijuana. It should be emphasized that the agents did not see the loading or unloading of either vehicle, nor did they know who occupied them until the vehicles were stopped.

Appellants were charged with one count of unlawfully possessing marijuana for sale, a second count of unlawfully transporting marijuana, and with a third count, conspiracy to unlawfully possess marijuana for sale and to transport it. At their trial, appellants' motions for judgment of acquittal were granted on the charges of possession and transportation of marijuana and they were convicted of the conspiracy charge by a jury.

Appellants urge that the evidence does not sustain the convictions because no overt act in furtherance of the alleged conspiracy was proven. They recognize that the substantive offense and a conspiracy to commit that offense are separate offenses. However, they argue from *Robles v. People*, 160 Colo. 297, 417 P.2d 232 (1966), that an acquittal of the substantive offenses of possessing and transporting is inconsistent with a finding of facts sufficient to convict on a conspiracy to commit those offenses.

Arizona follows the rule adopted in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). *See State v. Helmick*, 112 Ariz. 166, 540 P.2d 638 (1975); *State v. Zakhar*, 105 Ariz. 31, 459 P.2d 83 (1969). *Dunn* is a case in which the defendant was indicted on three counts: (1) for maintaining a common nuisance for keeping and selling intoxicating liquors; (2) for unlawful possession of intoxicating liquor, and (3) for the unlawful sale of such liquor. The jury found Dunn guilty on the first count but acquitted him on the second and third counts. It was argued that the verdicts were inconsistent, but the court held:

"Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. [Citations omitted] If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as *res judicata* of the other." 284 U.S. at 393, 52 S.Ct. at 190, 76 L.Ed. at 358–59.

Similarly, if separate Informations had been filed against appellants for unlawful possession of marijuana for sale, and unlawful transportation of marijuana, and for conspiracy to unlawfully possess marijuana for sale and to transport it, an acquittal on any one of the offenses charged would not be a bar to a prosecution on the others. The trial judge could have believed that the evidence did not show these two defendants either possessed or transported the marijuana but that it did show they entered into an agreement to do so.

■ We have held that the gist of a conspiracy is the unlawful combination and agreement, *Carter v. State*, 36 Ariz. 1, 6, 281 P. 601 (1929), and that the object of the conspiracy must be criminal, *State v. Heron*, 94 Ariz. 81, 93, 381 P.2d 764 (1963). It is also essential that an overt act by one or more of the conspirators to effect the object of the conspiracy be alleged and proved, A.R.S. § 13–333.

An overt act has been defined by this Court as:

"an act done by one of the parties to carry out an intent, and it must be such as would naturally effect that result; at least, it must be a step toward the execution of the conspiracy." *State v. Sullivan,* 68 Ariz. 81, 90, 200 P.2d 346, 352 (1948).

The overt act need not itself be criminal, *People v. Hohensee,* 251 Cal.App.2d 193, 59 Cal.Rptr. 234, 238 (1967), as long as it is shown that the conspiracy has gone beyond the agreement to commit the offenses. *See People v. Saugstad,* 203 Cal.App.2d 536, 21 Cal.Rptr. 740, 749 (1962).

■ There is substantial evidence from which the jury could conclude an overt act was committed by appellants. Before Jordan and Edwards left Tucson to go to Nogales, appellant Gomez was observed talking to Jordan. Gomez and Dupuy were known to have visited Jordan and Edwards at the motel room and a short time later Jordan and Gomez and Dupuy were stopped north of Nogales while riding together in the direction of Tucson. The jury could conclude that there was a connection between the camper and the pickup which was carrying the marijuana from the testimony of Department of Public Safety agent, Wisner, who testified:

"Q. Have you during the course of these arrests involving vehicles in the transportation of marihuana, formed any pattern with regards of these vehicles?

A. Yes.

Q. And referring to the case presently on trial, did any of these patterns which you have observed throughout your experience as a police officer emerge in this particular incident?

A. Yes.

\*     \*     \*     \*     \*     \*

Q. Would you relate to the jury what patterns you saw in this particular case?

\*     \*     \*     \*     \*     \*

A. The two vehicles left. One vehicle was the pilot car.

Q. What do you refer to when you say the pilot car?

A. The pilot car acts as a decoy for the vehicle transporting the narcotic."

The jury could reasonably infer from the foregoing testimony that the vehicle following the truck in which the marijuana was being transported was a decoy vehicle, as described by the officer, or, at a minimum, that the riders in the camper-truck were to assist Deborah Edwards if necessary to assure that the marijuana reached its destination.

But if it be assumed that the trial judge in directing verdicts of acquittal on the two substantive offenses believed that the evidence did not establish that appellants aided and abetted the possession for sale and the transportation of marijuana,[1] the jury could have still found that there was an agreement to commit the substantive offenses and that the overt act necessary to support the execution of the conspiracy was committed by Deborah Edwards, a co-conspirator.

■ Appellants argue that their actions were of such an innocuous nature that no reasonable man could objectively conclude therefrom that there was probable cause for the arrest and search of the vehicles. We disagree. The trial judge concluded after a hearing on a defense motion to suppress the evidence of the marijuana seized in the Edwards vehicle that there was no illegal search or seizure. A trial court's finding in support of denial of a motion to suppress will not be reversed in the absence of a clear abuse of discretion. *State v. Boyer,* 106 Ariz. 32, 34, 470 P.2d 439 (1970).

In *State v. Miller,* 112 Ariz. 95, 537 P.2d 965 (1975), we said:

"A person may be arrested without a warrant if there is probable cause to be-

---

1. A.R.S. § 13–140 provides:

"All persons concerned in the commission of a crime whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall be prosecuted, tried and punished as principals, and no other facts need be alleged in any indictment or information against such a person than are required in an indictment or information against a principal."

lieve that a felony has been committed and that he is the person responsible. A.R.S. § 13–1403. Probable cause exists if the arresting officer knows facts and circumstances sufficient to justify the belief of a reasonable and prudent man that a crime has been committed by the individual arrested. *State v. Edwards,* 111 Ariz. 357, 529 P.2d 1174 (1974). Probable cause is a practical matter on which men of caution act, not legal technicians. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Stauffer,* 112 Ariz. 26, 536 P.2d 1044 (1975). The collective knowledge of the officers involved can be considered. *State v. Richards,* 110 Ariz. 290, 518 P.2d 113 (1974)." 112 Ariz. at 97, 537 P.2d at 967.

█ It has long been the rule since *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that a police officer, when he has probable cause to believe that a motor vehicle contains contraband, may search the vehicle and seize the contraband without a warrant if exigent circumstances are present. And *see State v. Sardo,* 112 Ariz. 509, 513, 543 P.2d 1138 (1975); *State v. Harrison,* 111 Ariz. 508, 509, 533 P.2d 1143 (1975). The apparent mobility of a motor vehicle presents a pressing need for a prompt search. *State v. Sardo,* supra. We held in *State v. Benge,* 110 Ariz. 473, 520 P.2d 843 (1974):

"It is well established that if law enforcement officers have probable cause for searching an automobile, such probable cause furnishes sufficient constitutional justification for their searching the automobile without obtaining a search warrant, and that in this respect the right to search an automobile is different from and broader than the right to search premises such as home, store, or office. (Citations omitted.)" 110 Ariz. at 478, 520 P.2d at 848.

The cumulative effect of the events in question justified a reasonable belief beyond a mere suspicion that one or the other of the two vehicles was carrying contraband. There was probable cause which justified a stop and search of both vehicles.

█ Appellants contend that the State failed to disclose the names of two witnesses pursuant to Rule 15.1 of the Rules of Criminal Procedure and consequently it was error for the trial court to deny their motions to dismiss and for mistrials. Under Rule 15.7, Rules of Criminal Procedure, the court is authorized to apply sanctions against a party who fails to comply with the provisions of Rule 15 requiring disclosure. We have said:

"The imposition of sanctions as provided by Rule 15.7, Rules of Criminal Procedure, is a matter within the discretion of the trial court. *State v. Kevil,* 111 Ariz. 240, 527 P.2d 285 (1974). Absent a showing of prejudice to the appellant, this court will not find an abuse of discretion. *See State v. Castaneda,* 111 Ariz. 264, 528 P.2d 608 (1974)." *State v. Clark,* 112 Ariz. 493, 495, 543 P.2d 1122, 1124 (1975).

The trial court ruled prior to trial:

"THE COURT: I feel in the interest of justice, if the defendant has had this opportunity to talk to all the witnesses, has examined them, has all the reports—I feel in the interest of justice, the matter should not be dismissed; therefore, the record will show all the defendants' motions are denied and we will proceed in the trial of this matter.

MR. MC DONALD: Are you also stating that reason for the defendant Gomez?

THE COURT: No, my ruling was based on the reasons I gave for the ruling as to Dupuy, which was that Mr. Oseran of course has had access to all the witnesses and as to Defendant Gomez now, all the witnesses were disclosed to you, right, except for Jordan?

MR. MC DONALD: Except for Jordan; but I wasn't present at any of the things Mr. Oseran testified to.

THE COURT: There is evidence you were present with the County Attorney and heard a recording of the witness Jordan, is that true?

MR. MC DONALD: Yes.

THE COURT: The record will show all the motions are denied as to Defendant Gomez also."

As the excerpt indicates, the attorney for Gomez knew of all witnesses who were used by the State at the trial.

Moreover, one of the two witnesses about whom complaint is made did not actually testify at the trial. He testified at a pre-trial motion to suppress. Rule 15.1(a)(1) requires that the prosecution furnish the names and addresses of witnesses whom he will call "in the case-in-chief."

The other witness was a chemist for the Department of Public Safety. The words "D.P.S. chemist" were typed on the Information filed July 21, 1975. This was sufficient to advise the defense since the chemist's report was placed in evidence at the preliminary hearing. The trial court did not abuse its discretion in failing to impose sanctions against the State.

■ Appellant Dupuy claims reversible error because an omnibus hearing was not held prior to trial as required by Rule 16.-1(b) of the Rules of Criminal Procedure. Dupuy's trial date was set for November 4, 1975. On October 9, 1975, counsel for Dupuy requested an omnibus hearing in writing. On October 20, 1975, the trial judge disqualified himself and another judge was called to sit in his place. All of Dupuy's pretrial motions were heard and denied on the 4th of November by the successor judge, including a motion to dismiss for failure to hold an omnibus hearing.

Dupuy urges that "[t]he right to make timely motions before trial is a critical part of an Omnibus Hearing and the prejudice caused by the preclusion of timely motions and discovery requests cannot be alleviated by allowing them at the time of trial." We have examined the record and can find no prejudice to appellant resulting from the court's failure to hold an omnibus hearing. The trial court carefully considered all of defendant's pretrial motions which would ordinarily have been heard at an omnibus hearing. Rule 16.3, Rules of Criminal Procedure. There is nothing in the record which indicates that the disposition of any of Dupuy's motions would have been different had they been considered at another earlier time or that he was in fact prejudiced by the failure to hold the hearing.

Appellant Gomez claims that the trial court erred in not granting a mistrial on his motion based on the following allegedly prejudicial remarks:

"THE COURT: Is the defendant Gomez and—is the defendant Dupuy here?

[GOMEZ'S ATTORNEY]: The defendant Gomez isn't here. He is in jail.

[ASSISTANT COUNTY ATTORNEY]: On another charge.

THE COURT: Is he in jail? Have the Deputies bring him over."

■ The trial court examined each prospective juror in chambers to ascertain which ones heard the above exchange. Jurors who ultimately were drawn to sit on the case either did not hear the remarks or they heard only that Gomez was in jail and did not hear the statement that it was on another charge. Since Gomez's attorney made the "He is in jail" remark, we do not think he has cause to complain that this prejudiced his case.

Judgments affirmed.

CAMERON, C. J., and HAYS, HOLOHAN, and GORDON, JJ., concur.