**50**

672 P.2d 1320

**STATE of Arizona, Appellant,**

v.

**Norma Jean WILL, Appellee.**

**No. 2 CA–CR 2792.**

Court of Appeals of Arizona,
Division 2.

Jan. 26, 1983.

Rehearing Denied April 25, 1983.

Review Granted June 10, 1983.

Stephen D. Neely, Pima County Atty. by Michael E. Owen, Tucson, for appellant.

McCarthy & Sandman by Cary Sandman, Tucson, for appellee.

## OPINION

BIRDSALL, Judge.

This appeal by the state questions the trial court's order suppressing certain physical evidence. The state attempts to justify reversal on either the theory that the evidence was lawfully seized pursuant to A.R.S. § 13–106(B)(4) or on Fourth Amendment probable cause grounds. The police in the instant case seized the appellee's pickup truck and upon searching it found a package which they believed contained cocaine. A warrant was obtained to search the package, but when it was opened it was found to contain quaaludes, a prohibited dangerous drug. The appellee was charged with unlawful possession for sale of that dangerous drug.

A.R.S. § 13–106(B)(4) provides that property subject to forfeiture under the drug offense chapter A.R.S. § 13–3401, et seq., may be seized without process if:

"B. . . .

4. A peace officer has probable cause to believe that the property was used or is intended to be used in an offense and that the offense will occur or the property will be removed from the jurisdiction of the seizing agency before a warrant can be obtained."

The truck was used in a cocaine transaction about six weeks before and the state contends that satisfies the first prong of the

statute. The appellee agrees this is arguable in the instant case. However, she contends that there was no probable cause to believe that the pickup would be removed from the jurisdiction before a warrant could be obtained. We agree with this contention.

The facts giving rise to the seizure of the vehicle are that it was used to transport cocaine on December 28, 1981. On that occasion the man with whom the appellee was living at all times material hereto was driving her pickup and was involved in that crime but no one was arrested. The officers involved continued to function in their undercover capacity with the same offenders apparently hoping to learn the identity of other criminals.

The next deal arranged was to "come down" on December 30 at the intersection of Magee and Oracle Road in Pima County, but it did not actually materialize. However, on that occasion the appellee's friend told the undercover officers he was going to get the cocaine. When he left the intersection officers followed him. He drove south on Oracle Road from Magee to Orange Grove where he drove into the shopping area. He returned in a few minutes saying he was "suspicious" of the deal. The vehicle he was driving that day was not the appellee's pickup. His co-conspirator who was with him at Magee and who remained there also told the officers that he had gone to get the cocaine.

Six weeks later another deal was set up for the same location, the Magee-Oracle intersection. The officers had the appellee's residence under surveillance, and when this transaction was to occur saw her boyfriend drive away from the home to the intersection in one vehicle while, at about the same time, the appellee left the residence in the pickup.

The appellee was followed to the corner of Oracle and Orange Grove Road. This would place her in the same area the boyfriend had driven to on the previous occasion when he said he was going to get the cocaine. There she mailed a package at the post office. Earlier she had stopped at the drug store at Ina and Oracle but found its post office closed over the noon hour. The officers' testimony suggests she was dawdling as if waiting for something to happen. The appellee claims all of her activities observed by the officers were innocent. However, the officers believed the cocaine might be in the pickup and that the boyfriend would come to get it after he had satisfied himself all was safe at the Magee location. Everything known to the officers at that time indicated that was what would probably happen. That is why she was followed to that location and the surveillance maintained. This never happened since the boyfriend and another were arrested at Magee, without the cocaine, for conspiracy to sell cocaine. Upon learning this, the officers watching the appellee moved in, seized the pickup, and the search followed.

On its theory under the forfeiture statute, the appellant argues that unless the pickup was seized at that time the appellee, upon learning of the arrests, would take the pickup out of the jurisdiction. The trial court did not find the facts gave rise to probable cause to support that conclusion and we must accept that finding absent clear and manifest error. *State v. Greenawalt,* 128 Ariz. 150, 624 P.2d 828 (1981). No such error appears. Absent some evidence to show that the truck would be taken out of the jurisdiction, we are bound to accept that ruling of the trial court.

However, the state argues on appeal, as it did in the trial court, that there was probable cause to believe the truck contained cocaine at the time of seizure at Oracle and Orange Grove. Since the fact it was a vehicle constituted an exigency, *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the officers could seize and search it then without a warrant, regardless of the forfeiture statute. The trial court rejected that theory stating in the minute entry granting the motion to suppress:

"THE COURT FINDS that in order to validate the search, there must be probable cause to seize under the Fourth Amendment, and the testimony is that Mr. Martin had no probable cause to ar-

rest the defendant Norma Jean Will on the basis that she had committed any crime, and similarly, Officer Martin did not have probable cause to believe that the defendant was in possession of contraband or had committed an offense, ...."

It is apparent that the trial judge was relying on testimony of the officer as to his subjective state of mind. Although this subjective state is a factor which may be considered, it is not controlling.

The question of whether there has been a violation turns on an objective assessment of the officer's action in light of the facts and circumstances confronting him at the time. *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 55 L.Ed.2d 168 (1978), reh'g denied, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978). The *Scott* court stated:

"[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Id. at 138, 98 S.Ct. at 1723, 56 L.Ed.2d at 178.

*See also United States v. Smith,* 643 F.2d 942, 944–945 (2nd Cir.1981), cert. denied, 454 U.S. 875, 102 S.Ct. 350, 70 L.Ed.2d 182 (1981) (standard for judging constitutionality of a search is a totally objective one); *United States v. Arra,* 630 F.2d 836 (1st Cir.1980) (actual motivation for seizure and search is irrelevant when an objective basis exists.)

The trial court's reliance on the officer's subjective beliefs is misplaced and the ruling based thereon is clear and manifest error. A reasonable officer given the facts existing at that time would have probable cause to seize and search the appellee's vehicle. *See State v. Dupuy,* 116 Ariz. 151, 568 P.2d 1049 (1977); *State v. Brooks,* 127 Ariz. 130, 618 P.2d 624 (App.1980). The facts give rise to no other reasonable determination than that she was probably holding the cocaine for her boyfriend while he made certain the transaction was safe.

The order suppressing the physical evidence is set aside.

HOWARD, C.J., and HATHAWAY, J., concur.