IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

TERRY THOMAS CROSBY, *Petitioner*,

*v.*

THE HONORABLE GEOFFREY FISH, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

STATE OF ARIZONA, *Real Party in Interest.*

No. 1 CA-SA 24-0206
FILED 12-31-2024

———————————————

Appeal from the Superior Court in Maricopa County
No. CR2023-008495-002
The Honorable Geoffrey H. Fish, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

———————————————

COUNSEL

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik (argued), Timothy R. Grimm, & Brian R. Gifford
*Counsel for Petitioner*

Arizona Attorney General's Office, Phoenix
By Casey D. Ball (argued) & Todd C. Lawson
*Counsel for Real Party in Interest*

---

**OPINION**

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1        Thomas Crosby petitions this court for special action relief, challenging the superior court's order denying his motion to dismiss election interference and conspiracy charges against him. We accept jurisdiction but deny relief.

¶2        We hold that the act of canvassing an election is an administrative responsibility. Thus, the superior court did not err by concluding that Crosby had no legislative immunity when he refused to deliver the canvass results to the Secretary of State. Nor did the superior court err by denying Crosby's dismissal motion because the complaint alleged enough facts to establish a crime and that Maricopa County had venue.

**BACKGROUND**

¶3        Petitioner Crosby was elected to the Cochise County Board of Supervisors ("Board") in 2020. Crosby, Ann English, and Peggy Judd served on the Board. The Board, as the county's governing body, must undertake several election-related duties. In a general election, the Board must canvass the results of the election and deliver the canvass results to the Secretary of State. *See* A.R.S. §§ 16-642, -646, -647. Besides the canvass, the Board must also perform a hand count of the greater of two percent of county precincts or two precincts. A.R.S. § 16-602.

¶4        During the 2022 general election, Crosby and Judd claimed they had concerns about the reliability of electronic voting machines. They began researching the legality of performing a full hand count of all ballots. The Cochise County Attorney and the State Election Director advised Crosby and Judd that they lacked the authority to conduct a full hand count. Still, on October 24, 2022, Crosby and Judd voted to conduct a full hand-count audit of all precincts. Two days later, the Board held an emergency meeting to discuss a letter from the State Election Director warning the Board that it should not perform a full hand count of the ballots but proceed with the limited hand count mandated by law.

¶5        The Arizona Alliance for Retired Americans filed a special action asking the superior court to enjoin a full hand count. On November 7, 2022, the day before the election, the superior court granted the preliminary injunction, enjoining the Board from performing a full hand count and ordering the Board to limit the hand count to what is authorized under Arizona Revised Statutes ("A.R.S.") § 16-602. On November 14, Judd and Crosby filed a special action against the Cochise County Elections Director, claiming the November 7 order allowed them to expand the hand count of the ballots so long as it was less than 100% of the total ballots. They later dismissed the special action.

¶6        On November 18, 2022, the Board held a special meeting to certify the election results. The County Elections Director presented the results of the elections to the Board, and the deputy county attorney advised the Board that it must certify the election by November 28, 2022, to comply with the law. Crosby and Judd voted to table the certification until November 28, 2022. At the November 28 meeting, Crosby again moved to table the certification until December 2, and the motion passed.

¶7        As Arizona Secretary of State, Katie Hobbs brought a special action in the superior court. At a December 1 hearing, the court ordered the Board to convene later that day to canvass the election and present it to the Secretary of State as required. Judd and English met later that day at an emergency session of the Board, voted to accept the canvass results, and submitted the results to the Secretary of State. Crosby attended the court hearing but did not attend the emergency Board session. Three days later, the Secretary of State, the Governor, the Arizona Supreme Court Chief Justice, and the Attorney General certified the 2022 election results.

¶8        After the election, the Attorney General's Office began investigating the Board's actions related to the 2022 election. Crosby and Judd appeared before a grand jury, and Crosby testified about his actions related to the 2022 canvass. On November 27, 2023, the grand jury returned an indictment against Crosby for one count of Conspiracy, a class 5 felony, and one count of Interference with an Election Officer, a class 5 felony. The grand jury found the alleged offenses were committed in Cochise and Maricopa Counties, and the State filed the charges in Maricopa County.

¶9        On February 7, 2024, Crosby moved to dismiss the criminal charges. Among his arguments were that his actions were protected by legal immunity, no interference could have occurred as a matter of law, and the conspiracy charge was being prosecuted in a county without venue. The superior court denied the motion, and Crosby filed this special action.

## JURISDICTION

**¶10**　　　　"An order denying a motion to dismiss is an interlocutory, nonappealable order." *Qwest Corp. v. Kelly*, 204 Ariz. 25, 27, ¶ 3 (App. 2002). The procedure for an appellate court to review the denial of a dismissal motion is through special action. *Id.* And this court generally accepts jurisdiction of special actions challenging the denial of dismissal motions in limited circumstances. *Id.* But special action review is appropriate to resolve issues of first impression and statewide importance. *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 135, ¶ 11 (App. 2003).

**¶11**　　　　Special action jurisdiction is appropriate here because denying Crosby legislative immunity before trial, if he is entitled to such immunity, would leave him with no adequate remedy on appeal. *See Mashni v. Foster*, 234 Ariz. 522, 526, ¶ 14 (App. 2014) (A defendant who asserts immunity has no adequate legal remedy after trial.); *see also* Ariz. R.P. Spec. Act. 1(a). Crosby argues that by denying his dismissal motion, the superior court abused its discretion and that jurisdiction is proper. *See* Ariz. R.P. Spec. Act. 3(c). We accept special action jurisdiction because legislative immunity for local officials derives in part from our constitution and has not been previously applied in the context of canvassing an election. *See City of Scottsdale v. Mikitish*, 253 Ariz. 238, 239, ¶ 4 (App. 2022) ("Although we normally disfavor accepting special action jurisdiction to review the denial of a motion for summary judgment, questions concerning immunity are particularly appropriate for special action review.") (quoting *Tucson Unified Sch. Dist. v. Borek*, 234 Ariz. 364, 367, ¶ 5 (App. 2014)); *Henke v. Superior Court*, 161 Ariz. 96, 99-100 (App. 1989) (Special action jurisdiction is appropriate when a dispositive motion claiming immunity has been denied because "we cannot allow a state official to be forced to trial when the process can and should be aborted in its early stages.").

## DISCUSSION

**¶12**　　　　Crosby makes three arguments in his petition for special action. First, he contends that supervisors on the Board possess legislative immunity, so the prosecution should be dismissed. Next, he argues that he could not be found guilty of election interference even if he admitted all the facts alleged in the indictment. Finally, he contends that venue for the conspiracy charge is improper in Maricopa County. Finding no error, we deny relief.

### A. Legislative Immunity Does Not Apply to the Board's Failure to Certify the Election Results.

¶13　　　　Legislative immunity shields lawmakers from civil and criminal liability for their legislative activities. *Mesnard v. Campagnolo*, 251 Ariz. 244, 248, ¶ 12 (2021). Absolute legislative immunity is rooted in the common law and is embodied in the United States Constitution and the principles underlying the government's separation of powers. *Id.*; *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998); *see* U.S. Const. art. 1, § 6 ("[Senators and Representatives] shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses[;] . . . and for any Speech or Debate in either House, they shall not be questioned in any other Place.").

¶14　　　　The United States Supreme Court has recognized that common law legislative immunity, like that found in the Speech or Debate Clause, exists for state, regional, and local legislators acting in a legislative capacity. *Bogan*, 523 U.S. at 49. And Arizona preserved this immunity in its constitution. *Fields*, 206 Ariz. at 137, ¶ 16; Ariz. Const. art. 4, pt. 2, § 7 ("No member of the legislature shall be liable in any civil or criminal prosecution for words spoken in debate.").

¶15　　　　To determine whether legislative immunity applies, courts look to the nature of the act at issue rather than the nature of the body authorized or required by law to perform that act. *Garibay v. Johnson*, 257 Ariz. 91, 96, ¶ 8 (App. 2024); *see Bogan*, 523 U.S. at 45 ("Officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions."). An act is legislative "when it bears the hallmarks of traditional legislation" as a discretionary, policymaking decision with prospective implications rather than merely applying existing policy, like creating administrative rules to implement legislative policy. *Fields*, 206 Ariz. at 138, ¶ 21 (quotation omitted). And legislative acts occur in fields where legislators traditionally have the power to act. *Id.*

¶16　　　　The Board's refusal to certify the election results was not a legislative act. Crosby's duty to canvass the election under A.R.S. § 16-642(A) was not discretionary. *See* A.R.S. § 16-642(A) (2022) ("The governing body holding an election *shall* meet and canvass the election not less than six days nor more than twenty days following the election.") (emphasis added); *Woodworth v. Woodworth*, 202 Ariz. 179, 182, ¶ 17 (App. 2002) (The ordinary meaning of "shall" in a statute is to reflect a mandatory duty.). Under A.R.S. § 16-642(C), the only time a governing body has a right to postpone canvassing an election is when returns from polls in an election

are missing. *See* A.R.S. § 16-642(C). But A.R.S. § 16-642(C) is not applicable here because the Cochise County Elections Department submitted and certified the election results to the Board by November 18, 2022.

**¶17**    Crosby himself admitted in his grand jury testimony that he was unaware of any issues with the election results submitted by the Cochise County Elections Department that would justify postponement. And the superior court's order in the mandamus action compelling the Board to convene and certify the election underscores the non-discretionary nature of the Board's duty to certify the canvass. *See Hunt v. Campbell*, 19 Ariz. 254, 278-79 (1917) (When the board refuses to perform its duty to canvass the election, mandamus action will compel it to do so.).

**¶18**    Further, the Board's canvass of the election is much closer to applying established policies than a policymaking decision. Policymaking occurs when a framework and goal for a task are given, but multiple discretionary decisions require the decisionmaker to balance the goals needed to arrive at a final plan. *See Fields*, 206 Ariz. at 138, ¶ 22. On the other hand, merely implementing established policy is not policymaking. *Id.* Canvassing the election results involves adding write-in and early votes to the results from the vote tabulating equipment. *See* A.R.S. § 16-622(A). Such a mathematical undertaking does not require the Board to make multiple discretionary decisions or balance goals. Instead, the Board had to follow the clear instructions outlined in the statute and the court's order, which compelled it to complete the canvass and gave no alternate action. *See* A.R.S. § 16-642(A).

**¶19**    And this court has already rejected Crosby's contention that his post-election duties required discretion. *Compare Ariz. All. for Retired Am., Inc. v. Crosby*, 256 Ariz. 328, 332, ¶¶ 10-11 (App. 2023) (Title 16 establishes detailed procedures for conducting a canvass, including for conducting a hand-count audit.), *with Fields*, 206 Ariz. 138, ¶ 22 (Redistricting is policymaking because the constitution instructs the council to create competitive districts and does not provide specific instructions on accomplishing that goal.). Canvassing is also not a field where legislators traditionally have the power to act, as canvassing is delegated to the executive branch. *See* Ariz. Const. art. 5, § 10 ("The returns of the election for all state officers shall be canvassed, and certificates of election issued by the secretary of state, in such manner as may be provided by law."); art. 5, § 1(A) ("The *executive* department shall consist of the . . . secretary of state.") (emphasis added).

¶20        Crosby argues the Board performed a legislative act because it enforced its procedural rules by voting to keep the canvass tabled. Because procedural decisions specify how the Board may vote on legislation, he contends it is a fundamental part of the legislative process that deserves categorical legislative immunity. While Crosby may be correct that voting and other legislative procedures support finding a legislative act, it alone does not decide the issue. *See Schmidt v. Contra Costa County*, 693 F.3d 1122, 1137 (9th Cir. 2012). Voting and following parliamentary procedures are not enough to make what is otherwise an administrative act legislative. *See Fields*, 206 Ariz. at 138, ¶ 21. We hold that legislative immunity does not apply to a governing body's duty to canvass an election.

**B.        Whether Crosby Committed Election Interference is a Factual Question for the Jury.**

¶21        Crosby argues that even if he admitted to all the facts alleged in the indictment, he would not have committed election interference with the Secretary of State's election-related duties. Upon a defendant's motion, a court must "order a prosecution's dismissal if it finds that the indictment, information, or complaint is insufficient as a matter of law." Ariz. R. Crim. P. 16.4(d). "If a defendant can admit to all the allegations charged in the indictment and still not have committed a crime, then the indictment is insufficient as a matter of law." *Mejak v. Granville*, 212 Ariz. 555, 556, ¶ 4 (2006).

¶22        Determining whether the superior court erred by denying Crosby's dismissal motion requires us to apply A.R.S. § 16-1004. Issues of statutory interpretation are purely legal issues, which we review *de novo*. *Mejak*, 212 Ariz. at 556-57, ¶ 7. "A person who at any election knowingly interferes in any manner with an officer of such election in the discharge of the officer's duty . . . is guilty of a class 5 felony." A.R.S. § 16-1004. Crosby contends that by referring to the words "discharge" and "duty" in the singular, the statute must refer to a specific duty that the statute must enumerate.

¶23        Crosby's election interference charge is based on his interference with the Secretary of State's duty to complete the 2022 canvass. Because the Secretary of State must canvass the election on the fourth Monday following a general election, Crosby contends her duties were limited to December 5, 2022. *See* A.R.S. § 16-648(A) (2022). By December 1, 2022, the Board had certified and transmitted the results to the Secretary of State's office.

¶24        Nothing in the plain meaning of A.R.S. § 16-1004 limits the time frame for interfering with the Secretary of State's duty to the date of her official canvass. As the State notes, for the Secretary to complete the canvass, she needed to make a "compilation of 15 county canvasses for: 10 elections for federal legislative offices, 8 elections for statewide elected offices, 90 elections for state legislative offices (30 Senators, 60 Representatives), 8 judicial retention elections, and 10 ballot propositions." Such an undertaking requires significant preparation and planning from the Secretary of State to complete the canvass by the statutory deadline. We therefore determine that A.R.S. § 16-1004 is not limited to the single statutory date on which the Secretary of State must certify the election and may relate to any interference.

¶25        Because the Secretary of State's duties are not limited to December 5, Crosby's actions before that date may amount to interference. Thus, whether his actions rose to the level of interference is a question of fact for the jury to resolve at trial. *See State v. Cid*, 181 Ariz. 496, 500 (App. 1995) (The jury is the finder of fact and will weigh the evidence.). Thus, the superior court correctly ruled that the alleged interference should be determined as a factual matter at trial.

## C.    The Venue for the Conspiracy Charge is Properly Located in Maricopa County.

¶26        Crosby argues that Maricopa County is not the proper venue, meaning that the Superior Court in Maricopa County lacks jurisdiction to preside over the case. Venue lies in the county where conduct constituting any element of the offense occurred. *State v. Mohr*, 150 Ariz. 564, 566 (App. 1986); A.R.S. § 13-109(A). In a criminal case, proper venue is a jurisdictional requirement. *Mohr*, 150 Ariz. at 566. "Venue may be proven by indirect or circumstantial evidence," and the State need only prove venue by a preponderance of the evidence. *Id.* Under A.R.S. § 13-109(A), the venue for criminal prosecutions is proper in the county where "*any* element of the offense or a result of such conduct occurred." A.R.S. § 13-109(A) (emphasis added). But if the crime is a preparatory offense, it "*may* be tried in any county in which any act that is an element of the offense, including the agreement in conspiracy, is committed." A.R.S. § 13-109(B)(7) (emphasis added). Conspiracy is such a preparatory offense. *State v. Sanchez*, 174 Ariz. 44, 46 (App. 1993).

¶27        Crosby contends that, under the Arizona Constitution, the result of a crime can only establish venue if the result is itself an element of the crime. Crosby points to dicta in *State v. Aussie*, which states, "to satisfy

the state constitutional requirement of trial in the county in which the offense is alleged to have been committed, the result conferring venue must be an element of the offense." 175 Ariz. 125, 127 (App. 1993) (quotation omitted); *see also* Ariz. Const. art. 2, § 24 ("In criminal prosecutions, the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed."). While the court seemed to find this interpretation persuasive, it declined to rule definitively on the issue as the result alleged in that case was an element of the crime charged. *Aussie*, 175 Ariz. at 127.

¶28　　　　As noted in cases before and after *Aussie*, "the constitutional provision was not designed to establish venue but rather to preserve the right to an unbiased jury." *State v. Swainston*, 139 Ariz. 95, 97 (App. 1984) (citing *State ex rel. Sullivan v. Patterson*, 64 Ariz. 40, 46-47 (1946)); *cf. State v. Willoughby*, 181 Ariz. 530, 543 (1995) (In the context of a defendant's right to trial by an impartial jury, the constitutional provision dealt with venue rather than state jurisdiction.). Article 2, § 24 and A.R.S. § 13-109 preserve different rights. Crosby has not pointed to another reason why the result of a crime could only serve as a jurisdictional element if the result were itself an element. Because, under A.R.S. § 13-109, a result need not be an element of the offense, jurisdiction is proper in Maricopa. *Aussie*, 175 Ariz. at 127 ("It appears that, under A.R.S. section 13-109(A), such a result need not be an element of the offense.").

¶29　　　　Crosby's argument fails for another reason: the State met its burden by showing that an element of the conspiracy occurred in Maricopa County. The elements of criminal conspiracy include "an unlawful object to be accomplished, a plan embodying means to accomplish that object, an agreement between two or more persons so that they are committed to cooperate for the accomplishment of that object, and an overt act." *State v. Johnson*, 120 Ariz. 170, 171 (1978). "An overt act has been defined . . . as 'an act done by one of the parties to carry out an intent, and it must be such as would naturally effect that result; at least, it must be a step toward the execution of the conspiracy.'" *State v. Dupuy*, 116 Ariz. 151, 153-54 (1977) (quoting *State v. Sullivan*, 68 Ariz. 81, 90 (1948)). But the overt act need not be criminal so long as the act takes the conspiracy beyond the agreement to commit the offense. *Dupuy*, 116 Ariz. at 154.

¶30　　　　At the November 28 meeting, Crosby motioned to table the certification until December 2, refusing to send the results to the Secretary of State. By this point, the deputy county attorney had informed the Board that it would violate Arizona law if it did not certify the election results before the November 28 deadline. If the State proves these facts at the trial,

it could allow a jury to conclude that Crosby knowingly violated Arizona law when he failed to certify and deliver the results to the Secretary of State when he voted to table the issue. *See* A.R.S. §§ 16-642, -646 (2022). Such conduct was, at a minimum, a step toward executing the goal of the alleged conspiracy to commit election interference. The Board's conduct occurred in two counties: (1) in Cochise County, where the Board should have certified and sent the election results, and (2) in Maricopa County, where the Secretary of State should have received the Board's certified election results. *See* A.R.S. § 16-646 (2022). Thus, the State has met its burden of proving by a preponderance of the evidence that venue is proper in Maricopa County. *See Mohr*, 150 Ariz. at 566.

## CONCLUSION

¶31      We accept special action jurisdiction but deny relief.



AMY M. WOOD • Clerk of the Court
FILED:   TM